*Criminal law—Libel—Truth as a defense—Probable cause—Malice—Negligence—Libel of public officer—Acts of May 25, 1897, P. L. 85, and April 11, 1901, P. L. 74, Section 1—Constitutional law.*

In the trial of an indictment charging defendant with distributing a defamatory circular without his signature, in violation of the Act of May 25, 1897, P. L. 85, and with a libel on a public officer, who was also a candidate for public office, a conviction will be sustained, where the defendant failed to prove either the truth of the charges contained in the circular, or that they were made without malice or negligence.

In such prosecution malice is presumed from the publication of the falsehoods.

Probable cause for belief excludes negligence, and is judicially defined as "a reasonable ground of suspicion supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of the conduct imputed to him." This cause must exist at the time of making the publication, and must be found in circumstances of adequate probative force, lying within personal knowledge or information derived from sources of such character as to lead a reasonably prudent man to regard it as trustworthy.

The Act of May 25, 1897, P. L. 85, penalizing the publication of defamatory statements without the writer's signature is not restricted, like the Act of April 11, 1901, P. L. 74, Section 1, to libels of public officers or candidates for public office, and, therefore, is not repealed by that Act, nor is it repugnant to Article 1, Section 7 of the Constitution of Pennsylvania.

The Act of 1897 does not take away privileges secured by the Constitution; it merely provides a specific penalty not only for anonymous libel on a public officer or a candidate for public office, but also on a private individual. It must be read as though the constitutional provision was written into it.

One who is charged with publishing a libel reflecting on the official conduct of a public officer or a person who is a candidate for a public office, may still show that the publication was made without malice or negligence.

*Evidence—Relevancy—Witnesses—Competency.*

In a prosecution for libel, the defendant cannot complain of the refusal of the Trial Court to permit him to ask the prosecuting witness whether he had asked another if a certain charge in the libel was true, the witness having testified that he had never discussed the matter, and that the charge was false.

In the prosecution for the publication of libellous matters in the form of a voluminous report, only part of which constituted the libel, a witness is incompetent to say whether, from her investiga-

**474 COMMONWEALTH v. WILHELM, Appellant.**

tion, she found any part of the report to be true, without showing the scope of her investigation and the defendant's knowledge of it when he published the report.

*Trial—Remarks of counsel—Failure of Defendant to Testify—Act of May 23, 1887, P. L. 158, Section 10—Comment by prosecuting officer—Waiver of privilege—Withdrawal of juror—Waiver of Right to object.*

Under the Act of May 23, 1887, P. L. 158, Section 10, the prosecution is not permitted to refer adversely to the failure of the defendant to testify in his own behalf. But a defendant waives this privilege when, in conducting his own defense, he offers an explanation of his failure to testify.

If counsel, after objections to improper remarks, prefers to go on with the trial instead of having a juror withdrawn, such preference is an election to go to the jury, and a waiver of the right subsequently to object.

Argued December 13, 1926. Appeal No. 315, October T., 1926, by defendant from judgment of Q. S. Schuylkill County, June T., 1926, No. 586, in the case of Commonwealth of Pennsylvania v. William Wilhelm. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Indictment charging defendant with libel on a public officer and with distributing a defamatory circular without his signature, in violation of the Act of May 25, 1897, P. L. 85. Before BECHTEL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on both counts on which judgment of sentence was passed. Defendant appealed.

*Errors assigned,* among others, were various rulings on evidence and the sentence of the Court.

*Graham C. Woodward,* for appellant, cited: Commonwealth v. Scouton, 20 Pa. Superior Ct. 503; 37 Corpus Juris, 83, Section 497; Jackson v. Pittsburgh Times, 152 Pa. 406; Hessel v. Bradstreet Co., 141 Pa. 501; Commonwealth v. Storey, 49 Pa. Superior Ct.

282; Commonwealth v. Swallow, 8 Pa. Superior Ct. 539.

*Cyrus M. Palmer,* and with him *M. M. Burke, A. D. Knittle* and *M. H. Spicker,* Assistant District Attorney, for appellee, cited: Commonwealth v. Thomas, 275 Pa. 140; and Commonwealth v. Emery, 273 Pa. 520.

OPINION BY LINN, J., March 3, 1927:

The indictment contained two counts; the first charged a libel on the district attorney of Schuylkill County at a time also when he was a candidate for congressional nomination; the second charged that appellant distributed a defamatory circular without his signature in violation of the Act of May 25, 1897, P. L. 85. He was convicted and sentenced on both counts.

The legal principles applicable were exhaustively considered in Com. v. Swallow, 8 Pa. Superior Ct. 539, and in Com. v. Storey, 49 Pa. Superior Ct. 282, and need not now be discussed. Appellant conducted his own defence, but did not take the witness stand. He distributed the libel in May, 1926. It was not signed by him nor did it appear to have emanated from him. It occupies many pages of the record. It contained serious charges against the district attorney and others and accused him of misdemeanor in office; if the matters stated about him were true, it was not unlawful to publish them.

The Act of April 11, 1901, P. L. 74, provides: "In all criminal prosecutions or indictments for libel, no conviction shall be allowed if the subject matter of the publication, whether contained in the newspapers or otherwise, relates to candidates for public office or the official conduct of public officers, and is found to the satisfaction of the jury to be proper for public information or investigation and not to have been maliciously or negligently made. In all such cases the truth may be given in evidence to the jury."

The record contains no proof of the truth of anything

charged against the candidate; he, himself, testified that the charges were not true, and the verdict supports him. Appellant sought to show that he had not circulated the charges maliciously or negligently. In that he also failed. He now complains, among other assignments, that the court sustained objections to evidence which he sought to introduce.

That we cannot sustain any of these assignments will appear obvious without discussion if we first state the facts disclosed by the evidence received in defense. In 1923, Marie Dormer, alias Marie Johns, who was not called as a witness, came into Schuylkill County about May 2nd, to make an investigation of alleged misconduct of the district attorney and others. It does not appear who employed her; about May 18th, while so engaged, she was joined by Joseph Meier. He testified that at her dictation, he "wrote up the report of her activities from May 2nd to May 18th. ...... " Thereafter from day to day, if there was anything to report, it was written on a separate sheet and apparently sent to Paul Houck. From what was stated in that way, a general report of some kind was prepared, though who prepared it or what became of it, does not appear. Neither Marie Dormer nor Meier prepared such a report. Paul Houck testified that he may have seen it but did not remember whether he made copies of it; that he did not give a copy to the witness Silliman, who had testified on behalf of the defendant that he had had a copy of some kind of report in Houck's possession. Meier testified that the reports he made were "not an official state investigation"; that he never signed any report and that his impression was that Marie Dormer signed only the last sheet "sent in."

We need not consider what would have been the effect of circulating the original report (or a copy of it) after investigation sufficient to submit to the jury to find absence of malice or negligence, because there was no

proof, and no competent witness was offered to prove, that the libel in question was a copy of that report. We refer to this at length only because appellant's position at trial seemed to be that he had circulated, and was justified in circulating, a copy of the report so referred to, but the evidence offered in defense does not support his position. It would support an inference that from the reports of Marie Dormer and Meier, a general report of some kind was prepared by some one and reached Dr. Houck. But this was not the series of loose sheets described by Meier as containing the result of Marie Dormer's and his own investigation. Appellant never saw the original report, and so far as appears, never consulted with anyone who saw or had to do with the report. There is no evidence that he ever communicated with Marie Dormer or that he ever saw or communicated with Meier prior to the trial.

From 1923 on, appellant knew that there had been an investigation by Marie Dormer and Meier; Mr. Silliman told him he had had a copy of an alleged report of it; Dr. Fleming gave him such a copy in 1923. In some of his questions, appellant referred to it as the report of an "investigation made by the State." There was no evidence that the state had anything to do with it, or that appellant inquired of any state official concerning the subject. It does not appear that Silliman or Fleming sustained any relation to the investigation which could justify appellant in giving credence to their copies. Not only is malice presumed from the publication of falsehoods such as those concerning Mr. Palmer, but the record supports the conclusion of the jury that appellant circulated the libel without first making such inquiries as a prudent man in such circumstances should make. Those questions were, however, submitted to the jury and no exception was taken to the charge.

"Probable cause for belief excludes negligence. This probable cause is judicially defined as 'A reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty' of the conduct imputed to him: [citing authorities]. And this cause must exist at the time of making the publication. It is obvious that the probable cause that will warrant belief must be found in circumstances of adequate probative force, lying within personal knowledge, or information derived from sources of such a character as to lead a reasonably prudent man to regard it as trustworthy. Mere rumor is not sufficient; nor is it enough that the matters in question have become the subject of general comment or even of widespread belief. To draw illustrations from the case before us, the newspaper press cannot be regarded as, of itself, an adequate source of information. Neither are statements received at second or third hand, or from persons having no direct knowledge of the matter......" Com. v. Swallow, supra; see also Com. v. Storey, supra.

We come, then, to the assignments from the 8th to the 16th which complain that the court sustained objections to evidence offered by appellant. His brief groups them with this single comment: "They distinctly show that inquiry into the good faith of the defendant in the publication and the truth of the allegations thereof were excluded." The record does not support that criticism. We must overrule all those assignments on the authority of Com. v. Swallow and Com. v. Storey, but owing to the importance of the case to appellant, we shall deal with them separately.

The 8th assignment is to the refusal to permit appellant to ask the prosecuting witness Cyrus Palmer, concerning a statement which appellant read from the libel, whether the witness had ever asked Meier if that

charge in the libel was true. Mr. Palmer testified that the charge was false, and not only said that he did not know Meier, but denied that there was any such discussion as that referred to in the question, and concerning which he was asked and denied that he was present at the time involved. The record shows that later, when Meier was asked about the passage in question, he testified that when he made the charge, he had never heard Palmer talk and therefore could not identify his voice, and that he had never seen him; he did not know and could therefore not testify that Palmer was present. In such circumstances, appellant has no cause to complain that the objection was sustained.

The 9th assignment is to a ruling allowing only a part of a long offer of proof to be made by Dr. Fleming. The court declined to permit that part of it concerning conditions in 1923 in Schuylkill County relating to the prosecution of various offenses and attributing them to alleged inefficiency of the district attorney's office. Part of the matter could only be hearsay and parts ("the results of those prosecutions before the grand jury") were matter of record; the witness was not competent to prove either.

The 10th assignment is to the refusal to permit Dr. Fleming to answer this question: "You learned that there had been an investigation made by competent state detectives in regard to Cyrus M. Palmer?" The question was obviously bad in form and in substance; there was no evidence and no offer to prove that the state made any investigation; neither Marie Dormer nor Meier were employed by the state, and there was no proof that there ever was a report of which the circular distributed by appellant was a copy.

The 11th assignment is to the refusal to permit Dr. Fleming to say whether when he received the copy of the report in his possession [in 1923] he had an

honest purpose in getting it and giving it to appellant; Dr. Fleming's purpose was not relevant in this trial.

The 12th assignment is to the refusal to permit Dr. Fleming to say whether there was a meeting in Pottsville in 1923, concerning a proposed state investigation of conditions in Schuylkill County. There is no evidence that there was a "state investigation," and no offer to show the possible relation of such meeting, if one was held, to the document circulated by appellant, or how it affected his conduct concerning the document. But Miss Miehle subsequently testified that "in pursuance of a meeting that was held in 1923 an investigation was made" and she assisted in making it. And Dr. Fleming also testified that he was present at a meeting "at which action was taken for the investigation."

The 13th assignment is to the refusal to permit Dr. Fleming to testify that the document circulated by appellant was a copy of the report originally made pursuant to the investigation of Marie Dormer and Joseph Meier. It is sufficient to say that as the witness had never seen the original and had no other standard by which to answer the question, the objection was sound.

The 14th assignment is to the refusal to permit Miss Miehle to say that after receiving a copy of the Dormer report, she went to Meier and asked him about the truth of an occurrence described therein, in which Meier was alleged to have participated. The 15th assignment also related to a possible meeting with Meier. The Court held that it was irrelevant what Miss Miehle did in the circumstances, as it was not proposed to connect the conduct of appellant with what she did. The decision was correct, but, as has been stated, Meier himself testified on the subject and showed that he had no basis whatever for including Mr. Palmer in the occurrence.

The 16th assignment is to the refusal to permit Miss Miehle to say whether in her "investigation of the conditions in Schuylkill County, is there anything in that report that you [she] find to be true?" It was properly excluded on several grounds; only the charges against Mr. Palmer were in issue, not whether anything else in the report was true; her opinion was not evidence; the scope and character of her investigation did not appear; it was hearsay, and it does not appear that libellant learned of her investigation until after he published the libel.

The second count of the indictment charged appellant with distributing without his signature, in violation of the Act of May 25, 1897, P. L. 85, the same circular that was set forth in the first count. The act provides: "That every person who, without appending his or her proper signature thereto, shall send or cause to be sent to another any written or printed communication or matter, the nature of which is either libelous, defamatory, scurrilous or approbrious, shall be guilty of a misdemeanor......" Concerning this, appellant contends (1) that the act is repugnant to article 1, section VII, of the Constitution; and (2) that it was repealed by the Act of 1901, supra. Article 1, section VII, provides, inter alia: "...... No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made, shall be established to the satisfaction of the jury;......" The Act of 1897 is not restricted, like section 1 of the Act of 1901, to publications concerning candidates for public office or the official conduct of public officers, but covers a much wider field of activity, and therefore is not repealed by it; within their respective provisions both statutes can be construed and

applied consistently with the constitutional provision. Being charged with publishing a libel reflecting on the official conduct of a public officer, who was also a candidate for public office, appellant might have shown, if he could, that his publication was not maliciously or negligently made; he also had the opportunity to prove that his charges were true. He was not deprived of the right to make those defenses. The Act of 1897 takes from him no privileges secured by the constitution; it merely provides a specific penalty not only for anonymous libel on a public officer, or a candidate for such office, but also on a private individual. It can and must be read as though the constitutional provision was written into it; there is no constitutional reason why the Legislature should not endeavor to prevent the distribution of such anonymous circulars (cf. Com. v. Rudy, 5 D. R. 270, McPherson, J.) by imposing a penalty for the specific offense.

Appellant does not suggest that the evidence as related to the second count, and the Act of 1897, as well as the manner in which all the evidence in the case was submitted to the jury, in any way deprives him of any specific constitutional privilege. The case was tried according to the familiar rules discussed in Com. v. Swallow, and in Com. v. Storey, supra.

The 17th assignment remains: the refusal to withdraw a juror. As has been stated, appellant tried his own case and argued it to the jury. The motion to withdraw a juror resulted from the following statement of counsel for the Commonwealth, addressed to appellant: " ....... You have made repeated statements here not in evidence. You were too cowardly to take the stand, and then you tried to tell this jury evidence that you had ...... " (motion to withdraw a juror). The following from the record described the occurrence: "The Court: ...... Now, in view of the fact that you yourself called the jury's attention to the

fact that you did not take the stand, and explained to them why you did not think it necessary for you to take it, I do not think that they are barred from commenting on it. Further than that, there is not a question of doubt that in your closing speech you argued many matters that were not in evidence at all, and some of them, at least, statements of your own that were injected into the case, and were not evidential, and never were offered in evidence. The statement that was made by Mr. Knittle [prosecuting attorney] was the result of a controversy or argument between the two of you at the counsel table, and was not made to the jury at all; it was rather incrimination and recrimination between the two of you. I do not think it was proper...... I do say to the jury, however, that the statement should not have been made probably in the manner in which it was made, and it was not made to the jury; it was the result of an argument between the two of you. Ordinarily, had you made no comment on the fact that you had not taken the stand, and attempted to explain it, I would feel that it was my duty to withdraw a juror and continue the case, because under the Constitution you do not have to take the stand, and no one has the right to comment on it, because if they had that right the effect would be to compel you to take the stand. But in view of the fact that you introduced it yourself I do not think it is sufficient to withdraw a juror." In the charge, the Court again instructed the jury to pay no attention to the matter.

Section 10 of the Act of May 23, 1887, P. L. 158, recognizes that a defendant need not testify, and that his failure to testify will not create a presumption against him and may not be "adversely referred to by court or counsel during the trial." We all agree that appellant put himself outside the statute. A defendant may waive the privilege to take the stand and testify, but if he testifies, he waives the constitu-

tional provision against self-incrimination and must go on and make a full disclosure: Brown v. Walker, 161 U. S. 596, 597; Raffel v. U. S., 271 U. S. 494, 496. If he testifies in one trial, on a retrial of the case if he does not offer himself as a witness, his evidence given in the former trial may be used as evidence against him: "His constitutional privilege, as far as that testimony is concerned, is waived, and cannot be reclaimed in any subsequent trial of the same indictment,": Com. v. House, 6 Pa. Superior Ct. 92, 104. This court has also held that if counsel for defendant objects to improper remarks by the prosecuting officer, but nevertheless prefers to go on with the trial instead of having a juror withdrawn, such preference is an election to go to the jury and a waiver of the right subsequently to object: Com. v. Nowyokot, 39 Pa. Superior Ct. 502. In Com. v. Brown, 264 Pa. 85, 91, involving the Act of March 15, 1911, P. L. 20, prohibiting inquiry of a defendant tending to show that he had committed other offenses, the court held that in the circumstances of that case the right to object was waived; see also Com. v. Emery, 273 Pa. 517, 519; Com. v. Thomas, 275 Pa. 137, 140; Com. v. Oefinger, 282 Pa. 60, 64; Com. v. Torti, 283 Pa. 44, 48; Com. v. Legins, 285 Pa. 97, 99. As this contention was apparently part of a personal and improper dispute between the respective counsel at the counsel table during the period allotted for argument to the jury, and as defendant himself had previously not only explained why he did not take the witness stand and testify but had stated to the jury matters which were not supported by evidence, we must hold that he waived the benefit conferred by law.

The assignments of error not specifically mentioned are overruled for the reasons generally stated above, though with reference to the fifth, we may add that no motion to quash was made.

The judgment is affirmed, and the record remitted to

the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.