# Commonwealth *v.* Foley, Appellant.

*Libel—Definition—Words and phrases—Malice in a lie—Implied malice — Probable cause — Negligence — Common law—Constitutional law—Liberty of press—Act March 31, 1860, P. L. 382.*

1. A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one dead or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule.

2. At common law, under the Act of March 31, 1860, P. L. 382, and under section 7, article I, of the Constitution, as the former is embodied therein, the publication must be malicious or negligent.

3. Malice is implied and established in all cases from the publication of false and defamatory matter, though the person making it is not moved by express or actual malice. A lie is never privileged; it always has malice coiled up in it.

4. Negligence as used in section 7, article I, of the Constitution, means want of probable cause; the latter arises from a proper occasion, a proper motive, a proper manner, and that the accused had reasonable cause for believing the substance of the publication to be true.

5. Such cause must exist at the time of making the publication, and must be found in circumstances of adequate probative force, lying within the personal knowledge of the publisher or writer, or information derived from responsible sources; mere rumor, general comment or even widespread belief is not sufficient.

*Constitutional law—Libel—Anonymous communication—Public officials—Constitution, article I, section 7—Act of May 25, 1897, P. L. 85—Titles of acts.*

6. The Act of May 25, 1897, P. L. 85, entitled "An act punishing the sending of anonymous communications of a libelous, defamatory, scurrilous or opprobrious nature," does not violate article I, section 7, of the Constitution.

7. Nor is the act unconstitutional as being defective in title.

8. There is nothing in the Constitution that prohibits the legislature from enacting that defamatory matter or a libel of an aggravated nature, published so as to conceal the identity of the author, is of itself malicious and negligent.

9. The legislature may also provide that such matter is so negligent and malicious that the jury should not accept any justification as an excuse; but the jury must ultimately decide both the questions of law and fact.

10. The Constitution does not prevent the establishment of a separate and distinct offense for such publication, with its own penalty.

11. The constitutional provision is a shield only for honest publications made in good faith by persons criticizing the official conduct or publishing the result of a proper investigation of the acts of a public official reflecting on his official position.

12. The Act of 1897, is broad enough to reach those who circulate the libel as well as the author of it.

Argued December 1, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 257, Jan. T., 1927, by defendant, from judgment of Superior Court, Oct. T., 1926, No. 314, affirming judgment of Q. S. Schuylkill Co., June T., 1926, No. 584, in case of Commonwealth v. Cornelius Foley. Affirmed.

Appeal from judgment of Superior Court: 90 Pa. Superior Ct. 475.

The opinion of the Supreme Court states the facts.

The Superior Court affirmed the judgment of the quarter sessions. Defendant appealed.

*Error assigned,* inter alia, was judgment of Superior Court, quoting it.

*Graham C. Woodward,* for appellant.—The Act of May 25, 1897, P. L. 85, is unconstitutional as affecting article I, section 7, of the Constitution: Com. v. Rentschler, 11 Pa. Dist. R. 203.

The title of the act is insufficient: Rogers v. Manufacturers Imp. Co., 109 Pa. 109.

*C. W. Staudenmeier,* Assistant District Attorney, with him *M. F. Duffy,* Assistant District Attorney, and *M. H. Spicker,* District Attorney, for appellee.

OPINION BY MR. JUSTICE KEPHART, January 23, 1928:

Appellant was convicted in the court below on two counts on a bill of indictment charging in the first count libel on the district attorney of Schuylkill County at the time he was a candidate for public office, and in the second count charging distribution of a defamatory circular without his signature, in violation of the Act of May 25, 1897, P. L. 85. The Superior Court sustained the conviction on both counts: 90 Pa. Superior Ct. 473. An appeal to this court was allowed on the constitutional question involved.

The Act of 1897 reads as follows: "An act punishing the sending of anonymous communications of a libelous, defamatory, scurrilous, or opprobrious nature. Section 1. Be it enacted that every person who, without appending his or her proper signature thereto, shall send or cause to be sent to another any written or printed communication or matter the nature of which is either libelous, defamatory, scurrilous or opprobrious shall be guilty of a misdemeanor and on conviction shall be sentenced to pay a fine of not more than five hundred dollars and undergo an imprisonment of not more than one year." It is charged that the act is in violation of article I, section 7, of the Constitution, which reads: "The printing press shall be free to every person who may undertake to examine the proceedings of the legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made, shall be established to the satisfaction of the jury; and in all indictments for

libels, the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases." It is appellant's contention that the act denies to him the benefit of this section, though at the trial he was accorded and took advantage of all rights guaranteed by it.

While the Constitution does not use words that would define a libel, or state what words written or printed would be punishable, or mention any of the constitutent elements of libel, or indicate what the effect of such publication must be, the provision in question was intended to cover prosecutions for libel as well as any other prosecution based on defamatory written or printed matter directed at public officials. The courts have held that publications, to be indictable, must be such as the law characterizes as libels. No definition has been framed that exactly comprehends all cases that may arise; the one most frequently used, and in being (having been adopted by the Act of 1860, the Criminal Code) when the Constitution was adopted, is that "a libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one dead or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule. In its most general and comprehensive sense it may be said that any publication that is injurious to the reputation of another is a libel": 36 C. J. 1143.

The constitutional change from the common law of libel was the granting of immunity to one charged with libeling a public official from conviction in any criminal prosecution where it is established to the satisfaction of the jury that the publication was proper for public information, and was not maliciously nor negligently made. The section writes into the Constitution what was theretofore a qualified privilege, where the publication concerns the official conduct of men in public capacity, or any other matter concerning such public officers that is proper for investigation or information, but only if

the publication is not malicious or negligent.  The Constitution states that a conviction cannot be had when malice or negligence is shown not to exist.

At common law, under the Act of 1860 and under section 7, article I, of the Constitution, as the former is embodied therein, the publication must be malicious or negligent.  Malice is not defined in the Constitution, but, in a legal sense, it is implied and established in all cases from the publication of false or defamatory matter, though the person making it is not moved by express or actual malice.  See Com. v. Swallow, 8 Pa. Superior Ct. 539, 610.  A lie is never privileged; it always has malice coiled up in it: Briggs v. Garrett, 111 Pa. 404.  Negligence, as used in the section, means the want of probable cause; the latter arises from a proper occasion, a proper motive, a proper manner, and that the accused has reasonable cause for believing the substance of the publication to be true.  "A reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in believing that the party is guilty of conduct imputed to him."  This cause must exist at the time of making the publication, and must be found in circumstances of adequate probative force, lying within the personal knowledge of the publisher or writer, or information derived from sources of such a responsible character as to lead any reasonable prudent man to regard it as trustworthy.  Mere rumor is not sufficient; nor is it enough that the matters in question have become the subject of general comment or even of widespread belief.  Nor is information from the newspaper press regarded as an adequate source; neither are statements received at second or third hand, nor from persons who have no direct knowledge of the matter.  See Com. v. Swallow, supra; see also Com. v. Storey, 49 Pa. Superior Ct. 282.

This has been the ordinary use and meaning of the terms "malice" and "negligence," as established by judicial decisions, though many states have enacted laws

generally on the subject.  Under the Constitution, unless such exculpatory evidence appears and is satisfactory to the jury, a conviction may follow.

There is nothing in the Constitution to prohibit the legislature or the court from further defining negligence or malice, or the proof necessary to show they did not exist.  They may enact that defamatory matter or a libel of an aggravated nature, published so as to conceal the identity of the author, is of itself malice and negligence.  They may also provide, and the court may instruct the jury, that it is so negligent and malicious that they, the jury, should not accept any justification as an excuse.  The jury must ultimately decide both the questions of law and fact.  The Constitution did not prevent the establishment of a separate and distinct offense for such publication with its own penalty.  This is the effect of the Act of 1897.  Nor did the fundamental law intend to establish a license for the unlimited abuse of public officials or others, especially where the wrongdoer seeks to relieve himself of responsibility through an anonymous communication or publication.  It is a shield only for honest publications, made in good faith by persons criticizing the official conduct or publishing the result of a proper investigation of the acts of a public official reflecting on his official position.  Therefore the legislature, under the Constitution, may strike effectively at anonymous publications and communications.

The Act of 1897, above quoted, deals with anonymous communications or publications and their punishment.  Pamphlets like the one in question, published by one then unknown, but afterwards discovered, show such a malignity of heart and a desire to do personal injury that the legislature or the courts may properly hold that such publications are so far malicious or negligent as to be impossible of justification, and could not be excused by the jury on any ground.  The question is one of degree; an anonymous communication contemplated by the Act of 1897 is one calling for extreme condemna-

tion.   What the legislature here endeavored to do was to strike down that character of writings known as anonymous publications of a libelous, defamatory, scurrilous or opprobrious nature.

The act is broad enough to reach those who circulate as well as the author of the libel.   Under the Act of 1901, publications concerning candidates for offices and public officers are within the constitutional protection.

There is no merit in the further objection that the title to the act offends the Constitution, in that it does not give notice of the contents.   The title is a fair and full presentation of the contents of the act.

The judgment and order of the Superior Court is affirmed at cost of appellant.

Argued December 1, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

