## Commonwealth, Appellant, *v.* Evans.

322

Argued September 25, 1944. Before KELLER, P. J.,
BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Louis L. Kaufman,* with him *Russell H. Adams,* District Attorney, for appellant.

*David B. Pitler,* for appellee.

OPINION BY RENO, J., December 13, 1944:

The Commonwealth has appealed from an order quashing an indictment charging that defendant anonymously published a circular reflecting upon the personal character and the political actions of a candidate for public office. The indictment was based upon the Election Code of June 3, 1937, P. L. 1333, §1846, 25 PS §3546, and defendant's motion to quash alleged that the section was unconstitutional. But the lower court, thinking that the practically identical section of The Penal Code of June 24, 1939, P. L. 872, §415, 18 PS §4415, was attacked by the motion to quash, declared the latter section unconstitutional. This variance is immaterial; either section would support the indictment.

The cited section of the Election Code is: "Section 1846. Anonymous publication; libel.—Any person who writes, prints, posts or distributes, or causes to be written, printed, posted or distributed, a circular or poster, cartoon or other written or printed paper which is designed or tends to injure or defeat any candidate for nomination or election to public office, by reflecting on his personal character or political actions, unless the same shall be published in a newspaper avowedly

responsible therefor, or unless there appears on such circular, poster, cartoon or paper, in a conspicuous place, either the names of the chairman and secretary, or at least the names of at least two officers of the political or other organization issuing the same, or the name of some duly registered elector with description of his election district, as responsible therefor, shall be sentenced to pay a fine not exceeding five hundred ($500) dollars, or to undergo an imprisonment of not more than six (6) months, or both, in the discretion of the court, and if the statements are untrue, the person so offending shall also be guilty of libel and subject to criminal prosecution and civil action therefor." The defendant was appropriately indicted for an anonymous publication, not for libel.

This section, the court below held, violated Art. I, §7, of the Constitution of Pennsylvania: "The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made shall be established to the satisfaction of the jury; and in all indictments for libels the jury shall have the right to determine the law and the facts, under the direction of the court, as in other cases."

The meaning of §1846 is crystal clear. Apart from the heading prefixed to the section which is not controlling but may be considered in the construction of

a statute (Statutory Construction Act of May 28, 1937, P. L. 1019, §54, 46 PS §554), the words employed by the legislature explicitly indicate a purpose to denounce anonymous publications as a campaign device. Their total effect is to prohibit anonymous publications of written or printed matter "which is designed or tends to injure or defeat any candidate for nomination or election to public office, by reflecting on his personal character or political actions." The essence of the crime is anonymity, and the crime is committed, and is complete, when the prescribed matter has been published without compliance with the enacted exculpatory regulations. It is a distinct and separate crime. We repeat, anonymity is the core of the offense, and it is committed whether the content is true or false. For, as the section itself proclaims, the crime defined by it is distinguished from libel. If the matter is libelous it is also punishable as libel, and in a prosecution for libel the defenses pertaining to that crime are available. But in prosecutions for this crime truth or non-negligent publication are not defenses. If the publication is anonymous and false, the crime has been committed; if it is anonymous and true the crime has been committed; and, whether true or false, if it is published in accordance with the provisions which authenticate it or identify the writer, the crime defined by this section has not been committed.

The purpose of the legislation is equally obvious. It compels persons who charge candidates with private frailties or political misconduct to avow responsibility for their assertions. It prohibits campaigning in a cloak of anonymity; it compels a writer, exercising his right to the freedom of the press, to disclose his identity and assume responsibility just as a speaker, exercising his right to free speech, identifies himself by the very act of articulation, and, ipso facto, becomes responsible for his utterance. It is an attempt to raise

the ethical standards of political discussion, to promote fair play and fair competition in politics, to banish cowards from the political arena, and extirpate the dirty business of surreptitious character assassination. The section represents the views of both major political parties of the Commonwealth,[1] and even the judiciary is not so remote from the realities of political life that it cannot recognize it as wholesome and desirable legislation.

The power of the legislature in the premises is wholly free from doubt. The section of the Bill of Rights which guarantees the ineffably precious right of literary expression does not contain one syllable which protects anonymous writers. The Constitution shields only those who openly and in good faith publicly examine the official and private conduct of candidates for public office. *Com. v. Foley,* 292 Pa. 277, 141 A. 50; *Com. v. Wilhelm,* 90 Pa. Superior Ct. 473. The Constitution itself imposes responsibility as a condition to the exercise of the right, and that condition empowers the legislature to enact law under which identity must be disclosed and responsibility assumed. 11 Am. Jur., Constitutional Law, §321. This is the real purpose of the section. It does not deny any person his constitutional right to write or print information concerning a candidate. The section merely requires disclosure of the identity of the writer or publisher, that is, it requires only the open assumption of the responsibility imposed by the Constitution. The appellee's contention, when exposed to examination in the light of the Constitution, becomes a specious plea for the exercise of a right without acknowledging the existence of the correlative duty.

---

[1] In 1937, when the Election Code was enacted, the Governor and the majority of both houses of the General Assembly were Democrats; in 1939, when the Penal Code was enacted, the Governor and the majority of both houses of the General Assembly were Republicans.

The legislation is amply sustained by the police power of the Commonwealth. Under that power, the legislature may certainly promote clean campaigning and pure elections by regulations that have a real and substantial relation to the object to be attained, and which merely result in such a limited restraint upon the activities of candidates for public office, and of their advocates, as may be deemed necessary to prevent the electorate from being unduly influenced by prejudicial matter which, whether true or false, does not emanate from a responsible source. Under this power statutes forbidding participation in political activities by civil service officers and corrupt practice acts have been sustained though obviously they do limit to a degree the exercise of the constitutional liberty of free expression. 11 Am. Jur., Constitutional Law, §319. The police power may be employed to place reasonable restraints upon the exercise of the right of expression. *Com. v. Widovich*, 295 Pa. 311, 145 A. 295. It cannot be doubted that a power that possesses sufficient vitality to require the newspapers of the Commonwealth to publish the names of the persons who are responsible for their editorial and managerial policies (*Com. v. Short*, 228 Pa. 279, 77 A. 449) can also reach the writers of fugitive political circulars, and compel them to acknowledge their responsibility.

Appellee's further contention is that the section is unconstitutionally discriminatory because the effect of its provisions is to restrict written political discussion to electors. He points to the provision requiring that the publication shall contain the name of "some duly registered elector with description of his election district", and argues that this requires a citizen who is not an elector to confine his political discussions to a "newspaper avowedly responsible therefor", or have them sponsored by a political party. He conjures up an imaginary writer, a high school student of political

science who, because he is a minor is not and cannot be an elector, is by the section debarred from commenting adversely upon the personal character or political actions of a candidate by a cartoon or circular even though he appends his name to his production. If the section requires that construction, it will be time enough to make it when appellee's hypothetical schoolboy is before us. Appellee is not, so far as we are informed, a minor, or a high school student; he is indicted as an elector; and since he is not a member of the class with respect to which he alleges that the section is unconstitutional, he has no standing to question its validity upon the ground that it enfolds an invalid discrimination. *Turco Paint & Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37; *Plymouth Coal Co. v. Com.*, 232 U. S. 531, 34 S. Ct. 359.

Because the title to the Election Code does not contain specific reference to the section under review, appellee contends that it is constitutionally defective. There is no merit in the contention. The title is: "An Act concerning elections, including general, municipal, special and primary elections, the nomination of candidates, primary and election expenses and election contests; creating and defining membership of county boards of elections; imposing duties upon the Secretary of the Commonwealth, courts, county boards of elections, county commissioners; imposing penalties for violation of the act, *and codifying, revising and consolidating the laws relating thereto;* and repealing certain acts and parts of acts relating to elections." (Italics supplied). The Act is a code, revising and consolidating the laws relating to elections, and the constitutional prescription of the form of titles (Constitution, Art. III, §3) does not require that a code containing statutes previously enacted relating to some broad subject shall in its title refer to every item contained in the consolidating legislation, and to all the subjects

collaterally affected. *Williamsburg Borough v. Bottenfield,* 90 Pa. Superior Ct. 203. The fact that the prior statute (Act of June 26, 1895, P. L. 389) was declared unconstitutional by a lower court (*Com. v. Rentschler,* 11 Dist. 203) in a decision from which no appeal was taken, and which is now demonstrated to have been error, did not impose upon the legislature the duty to give notice by specific mention in the title to the Election Code that the prior Act was included in the consolidating law.

The order to quash is reversed and the record is remitted for further proceedings.