## State Board of Education, Appellant, *v.* Franklin Township School District.

Argued December 12, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Warren G. Morgan,* Assistant Attorney General, with him *John P. McCord,* Deputy Attorney General, and *Edward Friedman,* Attorney General, for State Board of Education, appellant.

*Robert Rhodes Rice,* with him *McNees, Wallace & Nurick,* for appellee.

*Peter J. Nolan,* Solicitor, for interested parties under Rule 48 of the Superior Court.

*William W. Knox, Conrad Pearson, Irving O. Murphy, Daniel L. R. Miller,* and *Knox, Pearson & McLaughlin,* and *MacDonald, Illig, Jones & Britton,* and *McClure & Miller,* for amici curiae.

*N. K. Parker, Jr., John U. Anderson, Jr., Harry Woodruff Turner, J. Richard Lauver, Spencer G. Hall,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* and *Nauman, Smith, Shissler & Hall,* for amicus curiae.

*Paul D. Shafer, Jr., Wayne S. Luce, E. Y. Calvin, John H. Bozic, Jr.,* and *Herbert E. Varnum,* for amicus curiae.

Opinion by Ervin, P. J., March 23, 1967:

We have for consideration the narrow question as to whether, under the provisions of the School Reorganization Act of 1963 (Act of August 8, 1963, P. L. 564, 24 PS §2-290 et seq.), the State Board of Education has the power, in an appeal by a school district that considers itself aggrieved thereby, to review a plan of organization of administrative units prepared by a county board of school directors and approved by the Council of Basic Education. We are not concerned with the merits of the plan approved and particularly we are not concerned with whether it is wise or unwise for the State Board of Education to have such power. We are concerned only with the language of the act itself. Although the present appeal concerns only a few school districts in Adams and York Counties, it affects school districts throughout the entire state[1] and the interest in it is so widespread that briefs in the nature of amici curiae were filed on behalf of 46 other school districts, some supporting the appellee and some supporting the appellant.

The background for the present appeal is as follows: On May 21, 1964 the Adams County Board of School Directors, pursuant to the School Reorganization Act of 1963, adopted a Plan for the Reorganization of School Districts in Adams County, which provided for six administrative units. On June 22, 1964, the plan was transmitted by the Adams County Board to the Council of Basic Education. On July 8, 1964, the Council of Basic Education approved the aforesaid

---

[1] The opinion of the court below states that more than 100 school reorganization appeals are pending in that court.

plan in the form submitted by the Adams County Board of School Directors. Thereafter, the school districts of East Berlin Borough, Mount Pleasant Township and Straban Township appealed to the State Board from the approval of the plan by the Council of Basic Education, contending that the plan should be amended to provide a single administrative unit for Adams County.

McSherrystown Borough School District also appealed to the State Board from the approval of the plan by the Council, contending that it should be established as a separate administrative unit within the Adams County Plan.

The Conewago Township School District also appealed, contending that it should be released from the Adams County Plan and assigned to the York County Plan as part of the Hanover Borough administrative unit.

The York County Board of School Directors had also adopted and submitted to the Council of Basic Education a Plan of School Reorganization for York County, whereby Hanover Borough School District was designated as Administrative Unit 63-5 of the York County Plan. The York County Plan was approved by the Council of Basic Education on January 8, 1964. Thereafter, the Hanover Borough School District appealed to the State Board from the approval by the Council of the York County Plan, contending that the Conewago Township and McSherrystown Borough School Districts of Adams County should be joined with the Hanover Borough School District as an administrative unit under the York County plan.

Because of their interrelationship, all of the aforementioned appeals were consolidated for hearing before the State Board which was held on November 4, 1964.

On March 11, 1965, the State Board entered orders in the various appeals by which it (a) Sustained the

appeals of East Berlin Borough, Mount Pleasant Township and Straban Township School Districts of Adams County, and in each case directed the Council of Basic Education to approve the Adams County Plan in an amended form, assigning all school districts of the county, with the exception of the Conewago Township and McSherrystown Borough districts, to a single administrative unit to be known as 63-1, and releasing and assigning the school districts of Conewago Township and McSherrystown Borough to Administrative Unit 63-5 of the York County Plan.

(b) Sustained the appeal of Conewago Township School District and directed that it and McSherrystown Borough School District be assigned to the York County Plan as aforesaid.

(c) Denied the appeal of McSherrystown Borough School District and assigned it to the York County Plan as aforesaid.

(d) Sustained the appeal of Hanover Borough School District and assigned the Conewago Township and McSherrystown Borough School District to the York County Plan as aforesaid.

Five school districts appealed to the Court of Common Pleas of Dauphin County and were consolidated for argument. That court sustained the appeals and set aside the adjudications of the State Board of Education, holding that the State Reorganization Act of 1963 conferred no right of appeal to the State Board from a plan of organization of administrative units which had been prepared by a county board of school directors and approved by the Council of Basic Education. The State Board of Education has appealed to this Court.

Before considering the language of the School Reorganization Act of 1963, it is necessary to understand the organization of the Department of Public Instruction. The State Constitution declares: "The General

Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this Commonwealth above the age of six years may be educated. . . ." To carry out this mandate the General Assembly has established a public school system and set up the Department of Public Instruction as a part of the state government to administer the school laws and assist the school districts in conducting their educational programs. The present organization and status of the Pennsylvania Department of Public Instruction are the result of many years of evolution. Administration of the Department is conducted by the Superintendent of Public Instruction.

The State Board of Education is a board within the Department of Public Instruction. It consists of seven members who serve as the Council of Basic Education, seven members who serve as the Council of Higher Education and three members at large.

The Administrative Code of 1929 (Act of April 9, 1929, P. L. 177) was amended by the Act of June 17, 1963, which added, after §408, several new sections defining the powers and duties of the State Board of Education. Section 1317(b) provides: "The State Board of Education shall: (1) Hear appeals of school districts which consider themselves aggrieved by a decision of the Council of Basic Education approving a county plan of organization of administrative units, or approving or disapproving an application for the creation of a new school district, or change in the boundaries of an existing school district; . . . ." (71 PS §367)

Section 1319(b) provides: "The Council of Basic Education shall have the power, and its duty shall be to: (1) Approve each county plan for the organization of administrative units submitted to the department for approval or prepared by the department. . . ." (71 PS §369)

At the local level the public school system of the Commonwealth is administered by a board of school directors in each district which are elected by the qualified voters of that district. (Act of March 10, 1949, P. L. 30, §301, 24 PS §3-301) Furthermore, in every county having a county superintendent of public schools there is a county board of school directors consisting of five members, except in counties of the second class, where the board consists of seven members. These members are elected at the annual convention of school directors of the county by a majority vote of the school directors. (Act of March 10, 1949, P. L. 30, §921, as amended, 24 PS §9-921)

For many years educators have recognized the fact that the larger the school district the more comprehensive can be the program of education offered and attempts were made to encourage districts to consolidate or merge. Prior to the year 1961, financial incentives were offered to local school districts which would reorganize under such plans but no effective power existed at the state level to compel such action. In 1961 the legislature passed the Act of September 12, 1961, P. L. 1283, 24 PS §2-281 et seq., which became popularly known as Act No. 561. This act for the first time set up a compulsory system of reorganization. Briefly, it provided that each county board of school directors should prepare a plan of organization of administrative units for the county, conforming to standards adopted by the State Council of Education, and submit the same to the Department of Public Instruction on or before January 1, 1963. It provided that the Department of Public Instruction should cause such plans as conform to the aforesaid standards to be placed upon the agenda of the State Council of Education, which should review such plans and approve such of them as it deems wise in the best interest of the educational system of the Commonwealth. If the State

Council of Education should disapprove any such plan, it was to be returned to the county board of school directors for reconsideration, amendment and resubmission. The act further provided that in the event no plan for a county should be approved by the State Council of Education prior to January 1, 1964, the Department of Public Instruction should prepare such a plan, which, when approved by the State Council of Education, would be the approved plan for that county.

This act promptly became the subject of great public controversy, resulting in its repeal less than two years later. The most pronounced objection to Act No. 561 was that it did not afford school districts the right of appeal. In a special message on education to the legislature on February 12, 1963, Governor Scranton made specific note of this. He stated that there could not be "reorganization dictated from above without any opportunity for appeal to objective, impartial authority." and "To further protect districts from arbitrary decisions, appeal from rulings of the new Council of Basic Education may be made to the new State Board of Education."

Many bills were submitted to the legislature in 1963, some of them merely attempting to repeal Act No. 561. However, Senate Bill No. 179, after extended debate and after two substantial amendments, was finally passed by the Senate on July 3, 1963 by a vote of 27 to 23 and finally passed by the House on July 31, 1963, after further debate but without further amendment, by a vote of 123 to 73, and became the Act of August 8, 1963, P. L. 564, 24 PS §2-290 et seq.[2] It is the provisions of this act which are now before us.

As did its predecessor (Act No. 561 of 1961), this act amends art. II of the Public School Code of 1949

---

[2] The Pennsylvania Manual states that the Act of 1963 contemplated the consolidation of 2056 school districts into 466 districts by July 1, 1966.

by adding a new subdivision on school district reorganization. It will be necessary for us to consider six of the newly added sections.

Section 290, statutorily expressing the purpose and intent of the legislature, provides in part as follows: "It is hereby declared to be the purpose and intention of the General Assembly to establish the procedures and provide for the standards and criteria under which school directors and district administrators and county boards of school directors and county administrators shall have the power and bear the duty of determining the appropriate administrative units to be created in each county to carry out the responsibilities shared by them and and the General Assembly, of educating and training each child within his capacity to the extent demanded by the immediate requirements of growth and strengthening of this Commonwealth and nation. Only where such local officials fail to act, or act arbitrarily outside of the standards and criteria provided for in the sections following, shall the Commonwealth through its duly authorized agencies and officials act to insure compliance with law within the powers set forth below and as restricted therein. The improvements in the educational system hereby obtained are not to be construed as a final resolution of organizational problems. Local school officials as agents of the General Assembly are directed to continually review organizational patterns and adopt without delay all changes which will accelerate the progress of public education. It is further declared to be the purpose and intention of the General Assembly that the above may be used in construing and arriving at legislative intent with respect to the provisions of this subdivision."

It must be noted that this section was not contained in Senate Bill 179 as originally introduced (Pr. No. 188). It was added by the same set of amendments

(Pr. No. 698) by which §293 was comprehensively amended to provide for the first time the acceptability of county board reorganization plans which had the stamp of State approval prior to September 12, 1961, the effective date of the now repealed Act No. 561 of 1961.

Section 291 remained substantially the same throughout the passage through the General Assembly. It directs the State Board of Education to adopt standards for organization of administrative units within a prescribed time and in doing so to take into consideration the following factors: ". . . topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education."

Section 292, "Submission of Plans," was twice amended in passage, one of which amendments afforded to a school district a right to voice its dissatisfaction of a proposed county board plan as set forth in the relevant portion of said section, which provides: "Each county board of school directors, on or before July 1, 1964, shall prepare a plan of organization of administrative units for the county, conforming to the standards for approval of administrative units adopted by the State Board of Education. The plan shall be submitted to the Department of Public Instruction not less than thirty (30) days nor more than sixty (60) days after it is prepared. Any school district which considers itself aggrieved by the plan may set forth its specific objections in a petition which shall be served by registered or certified mail on the secretary of the county board of school directors. All such petitions filed shall be appended to the plan prior to submission to the Department of Public Instruction."

Section 293, as noted above, was twice amended in its course of passage through the legislature. The provisions which now comprise subsection (b) were inserted by amendment to the bill and are key provisions in this controversy. This section provides: "Approval of Plans.—(a) When any plan of organization of administrative units for a county is found to conform to the standards for approval of administrative units adopted by the State Board of Education, the Department of Public Instruction shall cause such plan to be placed upon the agenda of the Council of Basic Education. The Council of Basic Education shall review all plans placed upon its agenda, and approve such plans as it deems wise in the best interests of the educational system of the Commonwealth. Except as hereinafter provided, no plan of organization of administrative units shall be approved in which any proposed school district contains a pupil population of less than four thousand (4,000), unless when factors of topography, pupil population, community characteristics, transportation of pupils, use of existing school buildings, existing administrative units, potential population changes and the capability of providing a comprehensive program of education are considered by the Council of Basic Education as requiring the approval of a plan of organization of administrative units in which one or more proposed school districts contains a pupil population of less than four thousand (4,000). (b) A plan of organization of administrative units for a county shall be approved by the Council of Basic Education, if the plan contains (i) no unit with a pupil population less than that of the unit with the smallest pupil population in the last previous county-wide plan submitted to and approved by the State Council of Education prior to September 12, 1961, and (ii) no more units than were in the aforesaid county-wide plan plus an additional unit for each second class

district which was not required to be a part of such county-wide plan and which was not included in an administrative unit thereof."

Section 294, requiring county plans of reorganization disapproved by the Council of Basic Education to be returned to the county board for reconsideration and resubmission consistent with the Council's recommendations, is not directly involved in this controversy. However, it should be considered conceptually in ascertaining the legislative intent.

The first paragraph of §295 containing the subheading "Department of Public Instruction to Prepare Plans" was practically identical with a similar section in the Act of 1961. It read: "In the event that no plan of organization of administrative units is approved by the Council of Basic Education for a county prior to January 1, 1965, the Department of Public Instruction shall prepare and place upon the agenda of the Council of Basic Education a plan of organization of administrative units for the county. When approved by the Council of Basic Education, such plan shall be deemed the approved plan of organization of administrative units for the county." However, during the course of its passage through the Senate, a second paragraph was added without any further subheading. It read as follows: "Any school district which considers itself aggrieved by a plan of organization of administrative units approved by the Council of Basic Education may appeal to the State Board of Education by filing a petition, within thirty (30) days after approval of the plan, setting forth the grounds for such appeal. A copy of such petition shall be served by registered or certified mail on the secretary of the county board of school directors. The State Board of Education, or its representative, shall fix a day and time for hearing, shall give written notice to all parties interested, and may hear and consider such testi-

mony as it may deem advisable to enable it to make a decision. After reaching its decision, the State Board of Education shall enter such order as appears to it just and proper, either directing the Council of Basic Education to approve the plan in an amended form or confirming the plan in the form previously approved by the Council of Basic Education. The decision of the State Board of Education shall be final, unless an appeal is taken as now provided under the provisions of the 'Administrative Agency Law.' "

The court below held that the appeals authorized by the second paragraph of §295 were limited to appeals from plans which originated in the Department of Public Instruction because of the failure of counties to act prior to January 1, 1965 and, specifically, that there was no provision in the act permitting appeals from plans approved by the Council of Basic Education under §293(b). We cannot agree.

It is apparent that the provisions of §293 are confusing. This section was referred to in *Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 211 A. 2d 487, a case which sustained the constitutionality of the School Reorganization Act of 1963, as follows: "More specifically, in Section 293, which, inter alia, provides that the Council of Basic Education is to approve such organization plans 'as it deems wise', the Act is most specific in revealing its purpose and the results which the Legislature sought to accomplish. The Section sets up two bases for approval by the Council of Basic Education, one primarily within the discretion and judgment of the Council and the other essentially mandatory if specified conditions exist. Both these bases reflect the primary legislative objective of reorganization in the direction of fewer and larger units. The 'mandatory' approval requirement is only applicable under conditions explicitly barring any reduction in the size of in-

dividual administrative units or any increase in the total number of units. The 'discretionary' approval provision is even more explicit in setting forth the Legislature's norm as to the minimum appropriate size of a school district for efficient and effective education under ordinary conditions. No plan is to be approved in which any proposed school district contains 'a pupil population of less than four thousand (4,000)' unless unusual, special factors require it."

This confusion was apparently caused because of the insertion of paragraph (b) during the period of its passage through the legislature. The court below reasoned that since it was mandatory for the Council of Basic Education to approve plans which originated with the county board and which met the requirements of §293(b), the legislature could not have intended that such mandatory action be subject to review. We do not believe that this was the intent of the legislature. Whether or not there are more (or less) districts and whether or not these districts are smaller (or larger) in reorganization than they were prior thereto is a purely mathematical question which would not in itself require the time or attention of a body so important as the Council of Basic Education. What should require its consideration is whether or not, in addition to size and number, the locally elected officials properly selected from among the myriad possible combinations which would meet the requisite standards, those which, in the light of local conditions and educational needs, were most appropriate and to approve the plans submitted only if it deemed them "wise in the best interest of the educational system of the Commonwealth" as a whole. However, regardless of whether an appeal would be unsuccessful because the action of the Council had been mandatory, nevertheless this in itself does not *deny* the right to appeal. The language of §295 is broad enough to permit an appeal by any school dis-

trict which considers itself aggrieved by any plan approved by the Council of Basic Education, which would cover plans approved under 293 (a) and 293 (b) as well as those prepared by the Department of Public Instruction under the first paragraph of 295. Furthermore, the provisions of §1317 (b) of The Administrative Code, previously quoted, permit the State Board of Education to hear appeals of school districts which consider themselves aggrieved by a decision of the Council of Basic Education approving a county plan of organization of administrative units. This clearly is not limited to plans prepared by the Department of Public Instruction.

The court below placed great reliance on the subheading to §295, "Department of Public Instruction to Prepare Plans" and holds that the appeals permitted under the second paragraph relate only to the plans prepared under the first paragraph. It is true that headings prefixed to chapters, articles, sections and other divisions of the law may be used to aid the construction thereof but they are not absolutely controlling. Section 54 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §554, provides: "The title and preamble of a law may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. Exceptions expressed in a law shall be construed to exclude all others. The headings prefixed to chapters, articles, sections and other divisions of a law shall not be considered to control but may be used to aid in the construction thereof."

It was held in *Com. v. Shafer,* 414 Pa. 613, 202 A. 2d 308, that the heading prefixed to a section of the law in no sense controls the construction of that section, citing the aforesaid section of the Statutory Construction Act; *Wiley v. Umbel,* 355 Pa. 206, 49 A. 2d 371; and *Com. v. Evans,* 156 Pa. Superior Ct. 321, 40 A. 2d 137.

On the other hand, there are several provisions in the Reorganization Act which indicate clearly that the appeals permitted under §295 are not limited to appeals from plans which originated in the Department of Public Instruction. The language of §295 itself refers to plans "approved by the Council of Basic Education." If it were intended only to permit appeals from plans originating in the Department of Public Instruction, it could have said "Any school district which considers itself aggrieved by a plan . . . prepared by the Department of Public Instruction . . . may appeal." Furthermore, the section requires that copies of the appeal petition shall be served on the secretary of the county board of school directors. This would seem an unusual requirement if the appeal was limited to plans which it had not prepared. More important, however, are the provisions of §297, which provide, inter alia: "(a) Any administrative unit contained in a plan of organization of administrative units approved by the Council of Basic Education may constitute and be deemed established as a school district on July 1, 1964, or on July 1, 1965, when the following conditions have been satisfied:

"(1) All appeals to the State Board of Education from the action of the Council of Basic Education approving the plan of organization of administrative units have been finally determined; . . . ."

When we consider that the Department of Public Instruction could not begin to prepare plans for a county which had not submitted its own plan, until January 1, 1965, it would be impossible for any appeals from such plans to be finally determined before July 1, 1964, and therefore the legislature clearly showed that it did not consider that the only appeals permitted were the appeals from plans originating in the Department of Public Instruction. On the other hand, it is possible that appeals arising under §293

either (a) or (b) could be finally disposed of prior to July 1, 1964 or July 1, 1965. We think this clearly establishes that the legislature contemplated that appeals would be taken from plans approved under §293.

Since the decision of the court below was that no right of appeal existed in the present case and that the adjudications made by the State Board of Education are void as being made without authority of law, it follows that the merits of the reorganization units have not been passed upon and we must vacate the order of the court below and remand the record to it to pass upon the merits of the respective appeals.

The order of the court below is hereby vacated and the record is remanded for further proceedings consistent with this opinion.

WRIGHT, J., would affirm on the opinion of Judge BOWMAN.

SPAULDING, J., concurs in the result.