172

Board of School Directors of the Mifflinburg Area School District, Appellants, *v.* Charles F. Dock, Owen T. Anderson, Jacob R. Snyder and Elmer E. Stahl, Appellees.

Argued January 8, 1974, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Robert W. Barton,* with him *John D. Killian, Paul E. Johnson* and *Killian & Gephart,* for appellant.

*Paul W. Brann,* with him *A. Thomas Wilson,* for appellees.

OPINION BY PRESIDENT JUDGE BOWMAN, April 24, 1974:

This is an appeal by the Board of School Directors of the Mifflinburg Area School District (MASD) from an order of the Court of Common Pleas of the 17th Judicial District (Union County Branch) enjoining MASD from denying to students residing in Buffalo Township the option of attending high school in either the MASD or the Lewisburg Area School District.

Buffalo Township lies between the Borough of Lewisburg to the west and the Borough of Mifflinburg to the east. It is now within the geographical boundaries of MASD, the appellant school district. Prior to 1952 Buffalo Township comprised a separate school district. As a result of its unique geographical location between two boroughs, its school district in 1952 became a part of the Western Area Jointure for grades 1 through 12 and a part of Eastern Area Jointure for grades 7 through 12. As an element of these jointure agreements, students residing in Buffalo Township had the choice of attending either the Western Area Jointure or the Eastern Area Jointure of which Lewisburg Secondary Jointure was a part for their education as to grades 7 through 12.

In 1963 the Legislature extensively amended the Public School Code of 1949, by the Act of August 8, 1963, P. L. 564, 24 P.S. §2-290 et seq., which Act required the reorganization of school districts into larger administrative units thereby encouraging more efficient administration of the public school system of the Commonwealth.

The genesis of the dispute in the instant case lies in the reorganization of the school districts within Union County as mandated by said Act. At the time such reorganization was mandated there were fourteen school districts within Union County, each with the power, authority and autonomy school districts then enjoyed subject to any jointure agreements then in force. Thirteen of the boards of these school districts favored a two-unit reorganization plan along the lines theretofore established by jointure agreements while Buffalo Township School District favored a county-wide one-unit reorganization plan. The record before us does not disclose the procedures followed by the county board of school directors of Union County and its constituent school districts in compliance with Section 292 of the Code, hereinafter discussed.

The record does disclose, however, that Buffalo Township School District on January 20, 1964, adopted a resolution announcing its position that it favored a one-unit reorganization plan but recognizing that all other districts favored a two-unit system, that its opposition to a two-unit system would delay reorganization and after "considering all of the circumstances" agreed to the two-unit plan, and that it become a part of the Western Area unit with the proviso that after reorganization the Western Area unit of which it would be a part "afford to all secondary school pupils in Buffalo Township the right and privilege to attend the Eastern Area Unit Secondary Schools on a tuition

basis" to be paid for by the Western Area unit together with costs of transportation.

On February 13, 1964, the Western Area Joint School Board adopted a resolution "accepting" the resolution of the Buffalo Township School District. The school districts of that jointure later became a part of the Mifflinburg Area School District on reorganization.

After reorganization of the county school districts was effected, upon submission of a two-unit plan by the county board of school directors to the Department of Public Instruction and its approval by the Council of Basic Education, Section 293 of the Code, some students who resided in Buffalo Township and thus within MASD attended school in the Lewisburg Area School District with the former paying the latter tuition for such attendance.

On October 14, 1971, the Board of School Directors of MASD adopted a resolution whereby it proposed to cease payment of tuition for students who, though residing in Buffalo Township and hence in the MASD, elected to attend Lewisburg Area School District. Appellees here sought and obtained from the court below the injunction which is the subject of this appeal.

The lower court found the aforementioned resolutions adopted by the Buffalo Township School District and the Western Area Joint School Board in 1964 to be binding upon the successor in reorganization, the MASD. This position appears to be founded upon a theory that Buffalo Township School District, at the time of reorganization, could have legally compelled reorganization of all the county school districts into a county-wide one-unit plan. We disagree.

Section 292 of the Code, 24 P.S. §2-292, provides in pertinent part: "Each county board of school directors . . . shall prepare a plan of organization of administrative units for the county. . . . Any school district which

considers itself aggrieved by the plan may set forth its specific objections in a petition. . . . All such petitions filed shall be appended to the plan prior to submission to the Department of Public Instruction." After the county plan has been submitted to the Department of Public Instruction, it is then placed upon the agenda of the Council of Basic Education. The Council then reviews these plans as provided in Section 293 of the Code, 24 P.S. §2-293. After Council approval, an aggrieved school district may take an appeal to the State Board of Education, *State Board of Education v. Franklin Township School District*, 209 Pa. Superior Ct. 410, 228 A. 2d 221 (1967), which decision is subject to judicial review.

It is within the context and requirements of these provisions of the Code that the efficacy of the resolutions in question must be considered. The referred to sections of the Code carefully delineate a procedure for the preparation, submission, approval, administrative review and judicial review of all plans. It recognizes and makes provision for objections by an aggrieved constituent school district of a reorganization plan submitted to the Department. It does not recognize a power or right of an individual school district to compel the approval of any particular plan nor, more importantly, to attach conditions or a proviso to its endorsement of a particular plan recommended to the county board by other school districts and the plan submitted by the county board as it is required to do by the Code.

We must also consider the public policy announced by the Legislature in mandating reorganization. In Section 290 of the Code, 24 P.S. §2-290, it is declared: "As the evidence demonstrates beyond reasonable dispute that the present administrative system of more than two thousand (2,000) school districts is incapable of providing adequate education and appropriate

training for all of the children of the Commonwealth above the age of six, the General Assembly hereby renews its dedication to its responsibility of providing a thorough and efficient system of public schools within the Commonwealth. It is hereby declared to be the purpose and intention of the General Assembly to establish the procedures and provide for the standards and criteria under which school directors and district administrators and county boards of school directors and county administrators shall have the power and bear the duty of determining the appropriate administrative units to be created in each county to carry out the responsibilities shared by them and the General Assembly. . . ."

This statement of *public policy* seeking a higher quality of education and a more efficient administration of the public school system through reorganization leaves no room for argument that a single school district incident to the submission and approval of a reorganization plan can, by purported agreement or otherwise, legally bind one or more other constituent school districts to a plan of reorganization, the county Board, the Department of Public Instruction or the emerged reorganized district to a proviso or condition that so obviously runs counter to the very purpose sought to be achieved by reorganization. It is difficult to imagine a more serious impediment to efficiency and responsible administration of a school district than the existence of an option in a student to decide whether he will attend the school district of his residency or another school district with the former then being responsible for tuition charges.

Whatever legal efficacy the 1964 resolution of the Buffalo Township School District might have had when adopted or when it was "accepted" by the Western Area Joint School Board—a matter of some doubt—it is clearly incompatible with public policy incident to re-

organization of school districts as announced by the Legislature and, therefore, invalid and unenforceable as against MASD which arose out of a reorganization plan for the County of Union.

Appellees also contend that Section 298 of the Code, 24 P.S. §2-298, mandates a different result. Section 298 provides that the obligations of former school districts shall become the responsibility of the newly established school districts. Even a cursory examination of Section 298 reveals that the obligations therein referred to are real and personal property indebtedness and rental obligations and are not the type of obligation, if it is an obligation, created by the resolution of MASD in 1964 or when "accepted" by Western Area Joint School Board.

Having reached the above conclusions, it is unnecessary to consider the other arguments advanced by the appellees.

The order of the lower court is reversed.