## Lancaster City Annexation Case (No. 1).

Argued May 26, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeal, No. 113,

*William B. Arnold,* for appellants.

*John B. Rengier,* Assistant City Solicitor, with him *Bernard M. Zimmerman,* City Solicitor, for City of Lancaster, appellee.

*Anthony R. Appel,* with him *Herbert S. Levy* and *Appel, Ranck, Levy & Appel,* for petitioning property owner, appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 26, 1953:

On July 7, 1952, the Council of the City of Lancaster (a city of the third class) enacted Ordinance No. 16-1952, annexing to Lancaster a tract of 13.177 acres of uninhabited land in Manheim Township (then a second class township), contiguous to the City's boundaries. The ordinance was the result of a petition by the Garden Spot Realty Company, owners of the tract. The Manheim Township authorities (Board of Supervisors, School Board, Tax Collector) and a William C. Schwartz, individual resident and taxpayer of the Township, appealed to the Court of Quarter Sessions

of Lancaster County protesting that the ordinance and annexation proceedings were void because:

(1) ". . . said provisions adversely affect townships and township school districts by permitting them to be deprived of territory and tax revenues, and by imposing new duties and burdens on them and their officers, *without notice thereof in the title/s of said statute/s, contrary to the provisions of Article III, section 3, of the Pennsylvania Constitution*"; (Emphasis supplied)

(2) ". . . said provisions prescribe powers and procedures for annexation by a third-class city different than those prescribed for annexation (a) by second class cities (by the Act of 1923, P. L. 473, 53 PS 9931), (b) by cities without distinction as to class (by the Acts of 1903, P. L. 332, and 1905, P. L. 216, 53 PS 91 et seq.), and (c) by boroughs (by the General Borough Act of 1927, P. L. 519, as amended, 53 PS 12461 and 12900), without any valid or substantial basis for differentiation or classification; *and that said statute/s relating to third-class cities, therefore are local or special laws regulating the affairs of cities, townships and school districts, and changing township lines and school districts, contrary to the provisions of Article III, Section 7, of the Pennsylvania Constitution.*" (Emphasis supplied) The Court of Quarter Sessions upheld the constitutionality of the legislation and this appeal followed.

Section 3 of Article III of the Constitution of Pennsylvania provides: "No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title."

In the ever-increasing complexities and volume of legislation encumbering modern day life, it is impossible for anyone to keep abreast of legal requirements and duties by reading *ipsissimus verbis* every statute passed by Congress and State legislatures. In order to enable persons, corporation, authorities, businesses and gov-

ernmental subdivisions affected by any particular statute, to be kept informed on what is currently expected of them, our constitutional fathers wisely provided that statutes having to do with shoemakers must mention shoemakers in the title. Once that is done, the constitutional requirement is satisfied. If the title had to then enumerate all the things that are legally expected of a shoemaker, titles would eventually not be much shorter than the statutes they proclaim.

In *Commonwealth v. Fireman's Fund Insurance Company*, 369 Pa. 560, this Court tersely put it: "The purpose of that section [constitutional] is to eliminate the so-called 'omnibus bills' and it is intended to operate to exclude from an act that which is secret and unrelated. . . It is sufficient to satisfy the constitutional requirement *if the title will lead a reasonably inquiring mind into the body of the act.*" (Emphasis supplied).

Thus, shoemakers wanting to know about new laws appertaining to their trade, would pass over any statute which in its title referred to port regulations. Equally, officials of townships bordering on third class cities are put on notice that legislation mentioning third class cities should lead "reasonably inquiring minds" concerned about what third class cities may do, to look "into the body of the act."

The General Assembly of Pennsylvania has on five occasions, since the adoption of the present Constitution, enacted laws having to do with civil, political and governmental powers exercisable by third class cities: (Act of 1874, P. L. 230; Act of 1889, P. L. 277; Act of 1913, P. L. 568; Act of 1931, P. L. 932; Act of 1951, P. L. 662.)

The first three of these Acts contained provisions relating to annexation. The title of the Act of 1889 reads: "An Act providing for the incorporation and government of cities of the third class." Under the

authority of this Act, the City of Scranton annexed certain adjoining land. (*Lackawanna Township, Harris's Appeal,* 160 Pa. 494). Some citizens living on that land appealed, protesting, inter alia, that the Act of 1889 was unconstitutional because its laconic title said nothing about annexation. This Court, in that case, speaking through Mr. Justice WILLIAMS, expounded quite interestingly the principle that annexation is an intrinsic right and duty imposed upon municipal corporations by the very exigencies of social progress and governmental orderliness: Justice WILLIAMS pointed out the growth of a city may be rapid: "Buildings may extend beyond its lines, and adjoining territory may be laid out by extending the city streets over it, and become undistinguishable from the city proper. It then becomes important for the people residing upon this territory, and for the city itself, that sewers, gas and water mains, police and fire protection, be extended over the district which, though separate in law, is physically a part of the city. The people residing on the territory so situated ask the city to take them in, and the city grants their request by an ordinance passed in the usual manner. This is an act that requires no special authority to sustain it. It is in the line of municipal legislation, needful for the proper government of the city, as its expanding proportions and municipal needs outgrow their original limits. The legislature has taken this view of the subject. Immediately after the adoption of the present constitution, the act of 1874, classifying cities and regulating the government of each of the several classes, was passed. The only words in its title that could cover the exercise of the power to admit adjoining territory are the words that constitute the title to the act of 1889. Yet the act of 1874 contains provisions authorizing the admission of out-lots, and adjoining territory, into cities with which they are con-

nected physically, and prescribes the mode of procedure to be adopted. It is clear therefore that the legislature did not regard an ordinance admitting adjoining territory into the city as an extraordinary exercise of municipal power that required to be taken notice of in the title of the act of 1874, but as an ordinary exercise of that power, by means of an ordinance, passed and approved in the ordinary way."

Since the power of annexation is, therefore, a governmental function to be expected in composite legislation dealing with powers of third class cities, it follows that any interested person should be aware that such power would be dealt with in the Acts of 1931 and 1951, which merely reenacted and consolidated the third-class city legislation.

The appellants seek to distinguish the *Lackawanna* case, supra, on the theory that the Act of 1889 involved no mandatory duties on the township officials, and in support of that proposition they cite *Commonwealth ex rel. v. Dale Borough*, 272 Pa. 189, where we held unconstitutional an amendment to the Third Class City Act of 1913 because it imposed a new mandatory duty on a borough council in connection with city annexation without giving notice thereof in the title: "It (the amendment) attempts, not to regulate what the cities of the third class may do in the matter of increase of limits, but imposes an entirely new obligation upon an independent municipality." In the instant case, however, no new obligation was imposed on the adjacent municipality. The duties of the township officials with respect to annexation of their land by third-class cities, had been imposed by the Act of May 9, 1929, P. L. 1694, entitled: "Providing a method of annexation of boroughs having a population of less than ten thousand inhabitants, townships or parts of townships or outlying lots, to cities of the third class; providing for the addi-

tion of such territory to adjacent ward or wards of such cities, or for the erection of such territory into a new ward or wards; providing for the regulation of indebtedness and assets of annexed territory; regulating the proceedings pertaining to such annexation; and repealing inconsistent legislation." It is obvious that the title of this Act gave sufficient notice of its provisions respecting annexation of townships to third-class cities and the regulation of the indebtedness and assets of the annexed territory.

The provisions of the Act of 1929 were reenacted and incorporated into the 1931 Third Class City Law and the 1951 Third Class City Code, though no *express* notification thereof appeared in the titles of the two latter acts.

On this subject the Superior Court well said in the case of *Commonwealth v. Evans,* 156 Pa. Superior Ct. 321: ". . . the constitutional prescription of the form of titles (Constitution, Art. III, Section 3) does not require that a code containing statutes *previously enacted relating to some broad subject shall in its title refer to every item contained in the consolidating legislation, and to all the subjects collaterally affected.*" (Emphasis supplied)

Even earlier, in the case of *Williamsburg v. Bottenfield,* 90 Pa. Superior Ct. 203, the Superior Court had held: "Article III, section 3 of the constitution does not require that a general act consolidating many statutes enacted over a course of years, with reference to some broad subject of legislation, shall in its title refer to all the other subjects collaterally affected by the passage of the various statutes to be consolidated. Those affected by such legislation were put upon notice of its effect on them when the statutes were originally enacted in compliance with Article III, section 3 of the Constitution

aforesaid, with the subjects of legislation clearly expressed in their respective titles. It is not necessary to repeat them again in the title of the consolidating act, provided the subject is germane to the general subject of legislation as it existed when the consolidating statute was passed. . . The title of a consolidating act must be passed upon in the light of the legislation already existing on the subject at the time of its passage."

The appellants further assert that the lower court's conclusion that "no new obligation was imposed" on Manheim Township in the instant cases by the Acts of 1929, 1931 and 1951, overlooked the fact that prior to the 1929 Act the applicable legislation (Sec. 6 of Article III of the Act of 1913, P. L. 568) provided that adjustment of property and indebtedness should be made by the Court, without responsibility on the part of township officers, and that the mandatory duty of township officers to work out an apportionment of indebtedness and assets was imposed for the first time by the Act of 1929, P. L. 1694. This contention finds answer in the case of *Commonwealth ex rel. Attorney General v. Snyder*, 279 Pa. 234, where this Court said: "A title need name only the real subject of the legislation; it need not set forth all enactments intended to be made in regard thereto. If the subject is designated with sufficient clearness to put one on inquiry into the body of the act, all necessary or appropriate details to carry out the purpose of the statute there found will be treated as within the title; nevertheless, each matter covered by the act, to be accounted as properly included therein, must be germane to the subject named."

Finally it is argued that the 1931 Third Class City Law and the 1951 Third Class City Code violate the provisions of Article III, Section 7 of the Pennsylvania Constitution, in that those statutes prescribe powers and procedures for annexation by a third class city

different from those prescribed for second class cities, other cities and boroughs.

Article III, Section 34, of the Pennsylvania Constitution (Amendment of November 6, 1923) provides: "The Legislature shall have power to classify counties, cities, boroughs, school districts and townships according to population, and all laws passed relating to each class, . . . shall be deemed general legislation within the meaning of this Constitution. . . ." The Acts of 1931 and 1951 were applicable to all cities of the third class and therefore "shall be deemed general legislation" within the meaning of the Constitution.

The order of the lower court is accordingly affirmed, with costs on the appellants.