546

Lancaster City Annexation Case (No. 5).

Argued May 26, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeal, No. 203,

*William B. Arnold,* for appellants.

*Bernard M. Zimmerman,* City Solicitor, and *John B. Rengier,* Assistant City Solicitor, for appellee.

*Paul E. Mueller,* for petitioning property owner, appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 26, 1953:

The Board of Commissioners, School District and Tax Collector of Manheim Township, and an individual taxpayer William C. Schwartz, have appealed from the decision of the Court of Quarter Sessions of Lancaster County, affirming the annexation of 0.522 acres in Manheim Township to the City of Lancaster, by Ordinance No. 27-1952, enacted September 16, 1952.

On appeal to this Court the appellants submit arguments as to unconstitutionality of the authorizing statute and change of status of Manheim Township from second to first class. These matters were resolved in companion cases filed today.[1]

The appellants, however, have raised a new question, to which this opinion is addressed, namely: "Is township land 'contiguous' to, and subject to annexation by, a city when it is separated from the existing city boundary by half the width of the bed of a township highway, and when no part of the highway is included in the description of the tract to be annexed?"

The lower court answered Yes.

The Act of 1951, P. L. 662, sec. 5, 53 P.S. 12198-501 provides for the annexation of borough and township land which is "contiguous to any city." The tract of land involved in this case lies northeast of the City of Lancaster and is separated from Lancaster by the Old Manheim Pike, a township road. The Lancaster City boundary line is the southwest line of the Pike, and the description of the land to be annexed does not include any portion of the southwestern half of the bed of the highway adjacent to the city line.

---

[1] *Lancaster City Annexation Case (No. 1),* 374 Pa. 529; *Lancaster City Annexation Case (No. 2),* 374 Pa. 537.

For some reason not indicated, the annexation area embraced one-half of the width of the roadway at the northwestern end of the Pike, but did not invade the rest of the 304.22 feet of Pike frontage. Thus the ordinance left between the annexed area and the Lancaster line a piece of land 244.35′ x 30′ and a narrower strip 59.97′ x 15′, all under the jurisdiction of Manheim Township for maintenance, repair and policing.

Is land thirty feet removed from a certain boundary contiguous thereto? The learned court below said in its Opinion: "The word 'contiguous' is a relative term and it may have different meanings depending upon the intention of the Legislature with reference to the statute in controversy."

There is nothing in the statute in controversy which suggests that contiguity means anything other than contiguity. If the Legislature had intended to include in the annexable field such land as was "nearby" or merely "close", it would have said so. If contiguity can leap 30 feet, it can leap 300 feet or 30 miles. If it is argued that the intervention of a street cannot destroy geographical juxtaposition, is there to be any limitation to the width of the street or boulevard?

The universally recognized authority on the English language, the Oxford Dictionary, defines contiguous as "touching, in actual contact, next in space, meeting at a common boundary, bordering, adjoining; continuous, with its parts in uninterrupted contact." To allow annexation of land *not* in contact, *not* bordering, *not* adjoining, would be to read absurdity into the Annexation Statute because on that basis land on the other side of a mountain, across a lake, or even beyond a township or two could be annexed to a city.

The learned court below quoted from the Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, Section 58 to the effect that: "All provisions of a law

shall be liberally construed to effect their objects and to promote justice." It is to be conceded that a pedantic interpretation of any document could lead to a conclusion never intended by the author. However, the mischief of pedantry cannot be cured by shooting the grammarian. "Words and phrases shall be construed *according to rules of grammar and according to their common and approved usage*; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this act, shall be construed according to such peculiar and appropriate meaning or definition." (Statutory Construction Act, supra, §33) Emphasis supplied.

In order to avoid the wrecking of statutory responsibility, language must move on the rails of precise construction over the roadbed of an established terminology. The Statutory Construction Act sagely pronounces: ". . . When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit": §51.

Under the home rule philosophy of our democratic form of government, the exact and authoritative location of municipal boundaries is imperative not only because of property rights but because of the requirements of suffrage, taxation, sanitation facilities, police jurisdiction and highway maintenance as well.

Neither the petition nor the annexation ordinance before us included the Manheim Pike in its description of the annexed land. Consequently no map, plan or plot on official record will show whether it has now become part of the City of Lancaster. In point of fact the lower court's decision would assume that the road still remains part of Manheim Township thus creating the anomaly of an "island" of Lancaster entirely surrounded by Manheim Township. Unregulated and uncontrolled annexations of this kind could lead to archi-

pelagos of city tracts within townships and township tracts within cities.

Nor does it follow, as a matter of law, as suggested by the court below, that the city's boundary automatically extended to the middle of Manheim Pike. Even if we were to assume the application of the doctrine that private land titles carry to the middle of a street described therein as a boundary, there was nothing in the evidence to show that Manheim Pike was described as the boundary of the City of Lancaster. The chance event that Manheim Pike does adjoin the City limits would not be enough, in itself, to extend the municipality's boundary to the middle thereof.

The lines of demarcation between municipalities should precisely appear in authenticated surveys and descriptions and not be imaginary lines dependent upon theory, or the fortuitous circumstances of the common ownership of land on both sides of a thoroughfare.

In the absence of legislative changes, there can be no relaxation of the rule of contiguity, if we are to have regularity and reliability in land records. To give way an inch is to yield a mile. This actually occurred in the case of *Williams Township's Appeal,* 139 Pa. Superior Ct. 146, where the City of Easton attempted to annex a city park located *one mile beyond the city's boundaries.* Although a different statute was involved there, the principle of contiguity now under consideration was the same. The Superior Court, in reversing the lower court which had allowed annexation, said: ". . . it would seem to be severely straining the meaning of the words 'to annex' to hold that because the legislature permitted annexation it thereby intended to include situations where the park was not contiguous to the city and perhaps might be a considerable distance from its boundaries. If we limit the meaning of the act so that annexation is permitted only when the park

actually adjoins the city, we do not do violence to the meaning of the word 'annex' and we accomplish a reasonable result."

The difficulties in this case could have been avoided if the petition for annexation had been drawn to include the bed of Manheim Pike, thus achieving a physical bondage between the two pieces of land owned by the Armstrong Cork Company.

The order of the lower court is reversed, with costs on appellees.