## Commonwealth v. Kempista

Before Klein, P. J., specially presiding, Flood, P. J., and Shoyer, J., specially presiding.

*Charles L. Durham*, Assistant District Attorney, for Commonwealth.

*Stanley B. Singer*, for defendants.

SHOYER, J., December 19, 1958.—Defendants having been found guilty of setting up and maintaining an illegal lottery, now, for the first time, challenge the authority of the judge who tried them. Arraigned before President Judge Klein of the Orphans' Court of the first judicial district (Philadelphia), specially presiding over a court of quarter sessions of the peace in and for this county, they pleaded "not guilty" and waived trial by jury.

The Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 402, 20 PS §2080.402, provides as follows:

"Subject to regulation by the Supreme Court, any judge of an orphans' court may hear and determine any matter in any court of record . . . on call by the president judge of the court in which he is to sit. . . ."

Counsel for defendants contends that this ostensible authority conferred upon a judge of the orphans'

court to sit specially in a court of quarter sessions is invalid since this asserted jurisdictional power "flows from an unconstitutional spring". Counsel argues that under article III, sec. 3, of the Constitution of this Commonwealth the title of the Orphans' Court Act of 1951 is deficient in that it fails to give clear and reasonably comprehensive notice of the power of orphans' court judges to sit in criminal court.

Counsel's argument lacks merit for several reasons. We note, in passing, that President Judge Klein, by virtue of the cloak of statutory authority under which he sat, was not only a de facto judge, but also a de jure judge to everyone but the Commonwealth: Corporation Funding and Finance Co. v. Stoffregen, 264 Pa. 215, 219; Coyle v. Commonwealth, 104 Pa. 117; Campbell v. The Commonwealth, 96 Pa. 344; Clark v. The Commonwealth, 29 Pa. 129; Commonwealth v. Burrell, 7 Pa. 34; Commonwealth ex rel v. Ashe, 86 Pitts. L. J. 600. This being so, his authority cannot be questioned collaterally, but only by quo warranto at the suit of the Commonwealth: Campbell v. The Commonwealth, supra, 347; Coyle v. Commonwealth supra, 130. Furthermore, since defendants' objection does not relate to jurisdiction over subject matter, it was waived if not promptly made: Commonwealth v. Musto, 348 Pa. 300, 304; Corporation Funding & Finance Co., Inc. v. Stoffregen, supra, 220; Tracey v. Pendleton, 23 Pa. 171; Commonwealth v. Dattala, 77 Pa. Superior Ct. 320, 324; Commonwealth ex rel. v. Ashe, supra; Commonwealth v. Beattie, 9 D. & C. 258.

Now, addressing ourselves to the heart of the problem, we find that the judges of the orphans' court were first given statutory authority to try criminal cases by the Act of July 19, 1913, P. L. 844, entitled: "An act to authorize the judges of separate orphans' court . . . to hear and determine all issues in the . . . courts of quarter sessions of the peace."

Clearly this title fulfilled all the requirements of article III, sec. 3, of our State Constitution which reads:

"No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title."

The Act of 1913, supra, was one of 31 acts consolidated and incorporated in the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS §2082 et seq. This statute was originally one of seven bills pertaining to decedents' estates which were carefully drafted after two years of study by a commission of three members, of whom the late Judge John Marshall Gest was one. Judge Gest was at the time a member of the Philadelphia Orphans' Court, and was universally considered to be one of the most learned jurists to ever sit on that bench. In carrying out the legislative mandate "to codify and revise", this commission reviewed more than 200 acts of assembly and incorporated their material portions in seven related bills, all dealing with the subject of decedents' estates. These bills were passed in immediate succession by the legislature, given act numbers in sequence, and all were signed by the Governor on the same date, to wit, June 7, 1917. Thereafter, these acts of assembly were dubbed by Philadelphia lawyers the "Seven Sisters", an expression at once evincing both affection and respect.

The Orphans' Court Act of June 7, 1917, P. L. 363, was entitled: "An act relating to the organization, jurisdiction, and procedure of the orphans' courts; *the powers and duties of the judges thereof;* and appeals therefrom." (Italics supplied.) Section 5 of this act, which continued the authority of the orphans' court judges to sit in criminal court, was copied, with but slight changes in phraseology, from the Act of July 19, 1913.

The Orphans' Court Act of 1951 was also the product of a commission directed by the General Assembly in 1945 to "study, revise and prepare for reënactment . . . the Orphans' Court Act" and the other six acts pertaining to decedents' estates. Its title, as amended, by the Act of July 11, 1957, P. L. 791, reads: "An Act relating to the orphans' courts; conferring exclusive jurisdiction on such courts over the administration and distribution of decedents' estates, trust estates, minors' estates, absentees' estates and incompetents' estates and the determination of title to real estate in certain cases; providing for the organization of orphans' courts, the procedure therein, *the powers and duties of the judges thereof*, and appeals therefrom." (Italics supplied.) Section 402 of this act, which again continues the authority of the orphans' court judges to sit in criminal court, is quoted above.

The law is clear that: "Article III, section 3 of the constitution does not require that a general act consolidating many statutes enacted over a course of years, with reference to some broad subject of legislation, shall in its title refer to all the other subjects collaterally affected by the passage of the various statutes to be consolidated. Those affected by such legislation were put upon notice of its effect on them when the statutes were originally enacted in compliance with Article III, section 3 of the Constitution aforesaid, with the subjects of legislation clearly expressed in their respective titles. It is not necessary to repeat them again in the title of the consolidating act, provided the subject is germane to the general subject of legislation as it existed when the consolidating statute was passed. . . . The title of a consolidating act must be passed upon in the light of the legislation already existing on the subject at the time of its passage": Borough of Williamsburg v. Bottenfield, 90 Pa. Superior Ct. 203, 207.

The answer to this whole problem is well summed up by our Supreme Court in Lancaster City Annexation Case (No. 1), 374 Pa. 529, 531, 532, 535, as follows:

"In order to enable persons, corporation, authorities, businesses and governmental subdivisions affected by any particular statute, to be kept informed on what is currently expected of them, our constitutional fathers wisely provided that statutes having to do with shoemakers must mention shoemakers in the title. Once that is done, the constitutional requirement is satisfied. If the title had to then enumerate all the things that are legally expected of a shoemaker, titles would eventually not be much shorter than the statutes they proclaim. . . . The Superior Court well said in the case of Commonwealth v. Evans, 156 Pa. Superior Ct. 321: ' . . . the constitutional prescription of the form of titles (Constitution, Art. III, Section 3) does not require that a code containing statutes *previously enacted relating to some broad subject shall in its title refer to every item contained in the consolidating legislation, and to all the subjects collaterally affected.*' "

It follows from the foregoing, that since the title to the Act of 1913 clearly expressed the subject matter contained therein, viz., authority of orphans' court judges to try criminal cases in courts of quarter sessions of the peace, all those affected by it were properly put on notice upon its original enactment. When the substance of this act was thereafter incorporated in the consolidating statutes of 1917 and 1951, there remained no constitutional requirement that the titles to the two latter acts give *specific* notice of such inclusion.

Other reasons assigned as error were not pursued either at the oral argument or in counsel's written brief. We have carefully reviewed the reporter's transcript, especially the testimony of Robert Conway, de-

fendants' previously convicted "numbers' writer". His testimony was clear, precise and positive. Nowhere, in either his direct or cross-examination, does any contradiction, confusion or uncertainty appear. We readily understand how his testimony satisfied the learned trial judge despite its tainted source. His credibility was for the trier of fact, and we see no reason to disturb the latter's finding of defendants' guilt.

Defendants' motion for a new trial is overruled and defendants' motion in arrest of judgment is dismissed, and defendants are directed to appear for the imposition of sentence by the court on Monday, January 5, 1959, in room 436, City Hall, at 10:30 a.m.