## Hempfield Township *v.* Greensburg.

Argued June 2, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*Robert M. Stefanon,* for appellant.

*Joseph B. Mitinger,* City Solicitor, for appellee.

OPINION BY JUDGE MANDERINO, July 30, 1971:

The City of Greensburg has annexed a portion of Hempfield Township in Westmoreland County. The annexation proceeding was commenced on June 5, 1969. This is an appeal from an order of the Court en Banc in Westmoreland County, entered on February 8, 1971, approving the annexation proceedings.

The Township of Hempfield (Appellant) challenges the annexation proceedings because it is claimed the Act of 1953, under which the annexation proceedings took place was no longer in effect having been repealed by constitutional changes which were approved by the electorate of Pennsylvania on April 23, 1968.

The Township argues that since this annexation proceeding was not commenced until June 5, 1969, and since this date followed the date of April 23, 1968, when the constitutional changes were approved by the electorate, the Act of 1953 had been repealed. We do not agree and hold that the annexation proceedings in this case were properly held because the Act of 1953 (Act of July 20, 1953, P. L. 550; 53 P.S. 67501 et seq.) was still in effect.

On April 23, 1968, the electorate of Pennsylvania approved a new local government article for the Pennsylvania Constitution. Section 8, of the new article reads as follows:

"Section 8. Consolidation, merger or boundary change.—Uniform Legislation. The General Assembly shall, within two years following the adoption of this article, enact uniform legislation establishing the procedure for consolidation, merger or change of the boundaries of the municipalities.

"Initiative. The voters of any municipality shall have the right, by initiative and referendum, to consolidate, merge, and change boundaries by a majority vote of those voting thereon in each municipality, without the approval of any governing body.

"Study. The General Assembly shall designate an agency of the Commonwealth to study consolidation, merger and boundary changes, advise municipalities on all problems which might be connected therewith, and initiate local referendum.

"Legislative Power. Nothing herein shall prohibit or prevent the General Assembly from providing additional methods for consolidation, merger or change of boundaries."

Appellant argues that the above Section 8, of the New Local Government Article in the Constitution had the effect of repealing all statutory enactments on the books concerning annexation on April 23, 1968, the date that the electorate of Pennsylvania approved the above new Section 8, of the New Local Government Article.

The power to provide for local government inherently resides in the people. The Legislature receives its authority from the people. Under the Constitution of 1874, this authorization was given by the people to the General Assembly under its plenary powers. In addition to any plenary powers of the Legislature, Section 1 of Article IX (the Local Government Article) states as follows:

"Local Government—The General Assembly shall provide by general law for local government within the Commonwealth. . . ."

Thus, the General Assembly has always had the right (even prior to the adoption of the New Constitution) to enact legislation concerning local government. Such legislation, whenever enacted, would remain effective unless repealed by the Legislature or by the Constitution. Appellant has not established that the Act of 1953 was repealed as to this annexation proceeding which was commenced on June 5, 1969. Appellant argues that the second paragraph of Section 8 repealed

the Act of 1953 by implication because it gave to the voters of any municipality exclusive rights (at least until new legislation is passed under the first and fourth paragraphs of Section 8) concerning the consolidation, merger, or change of boundaries in municipalities. This same argument was made in *In Re Annexation of East Donegal Township, Lancaster County*, 213 Pa. Super. 76, 245 A. 2d 706 (1968). In that case, the court decided that since the annexation proceedings had concluded in the lower court prior to the adoption of the New Local Government Article on April 23, 1968, the adoption of the Article had no effect on the annexation proceedings.

This same question was considered again in *In Re Borough of Macungie*, 213 Pa. Super. 313, 248 A. 2d 58 (1968). In that case, the court agreed that the second paragraph of Section 8 of the Local Government Article gave voters the right to effectuate annexation— but not an *exclusive* right. The court held that the effect of the second paragraph of Section 8 did not invalidate all annexation proceedings pending at the time it became operative because existing annexation legislation had not been repealed as to annexation proceedings pending on April 23, 1968.

The appellant goes further, however, and points to the Schedule adopted by the Constitutional Convention and claims that language in the Schedule indicates that there was a repeal of existing legislation.

The Schedule which is quoted by the appellant states: "This new Article and the repeal of existing sections shall take effect on the date of approval by the electorate. . . ." The appellant argues that the word "sections" in the Schedule means sections of legislation. This contention was dealt with in *In Re Hempfield Township*, 217 Pa. Super. 439, 272 A. 2d 729 (1970). In that case, the court held that no such repeal could pos-

sibly be construed from any language in the Schedule. We agree and think it is quite clear that the word "sections" in the Schedule did not apply to legislation, but only to sections of the prior Constitution.

This conclusion becomes even clearer if we examine the total *Proposal* adopted by the Constitutional Convention. At the Constitutional Convention, a *proposal* was similar to what is commonly referred to as a *bill* in the legislative process.

The *Proposal* adopted by the Constitutional Convention reads as follows:

## "A Proposal

"Amending the Constitution of Pennsylvania, providing for local government in Pennsylvania.

"The Constitutional Convention of Pennsylvania hereby proposes as follows:

"*Section 1.* The Constitution of Pennsylvania is amended by adding a new article to read:

## Article IX

## Local Government

"Section 1. ...
Section 2. ...
Section 3. ...
Section 4. ...
Section 5. ...
Section 6. ...
Section 7. ...
Section 8. ...
Section 9. ...
Section 10. ...
Section 11. ...
Section 12. ...
Section 13. ...
Section 14. ...

*"Section 2.* Sections 7, 8, 10, 15 and 19 of Article 8; Section 1 of Article 13; Sections 1, 2, 3, 4, 5, 6, 7, and 8 of Article 14 and Sections 1, 2, 3, 4 and 5 of Article 15 are repealed.

*"Section 3.* This new Article and the repeal of existing sections shall take effect on the date of approval by the electorate, . . . ." 1 Debates of the Constitutional Convention of 1967-68, 442-44 (1969). (Emphasis added).

When we read the words in Section 3 of the *Proposal* (also called *Schedule*) which the appellants have quoted, namely ". . . the repeal of existing sections. . .", in the context of the full *proposal* of the Constitutional Convention, we note that this language appears in Section 3 of the Convention's *Proposal* which immediately follows Section 2 of the *Proposal* and Section 2 specifically refers to Sections that are being repealed. All of the sections being repealed in Section 2 of the *Proposal* refer back to Section 1 of the *Proposal* which specifically says that it is the Constitution of Pennsylvania which is being amended and not a legislative enactment which is being amended.

Thus the word "section" appearing in the Schedule (Section 3 of the Proposal) cannot be read as referring to all existing sections of *legislation* because clearly in the *Proposal* adopted by the Constitutional Convention, it was the prior Constitution that was being amended. The references in Section 2 of the Proposal are clearly references to sections in other articles of the Pennsylvania Constitution which were being repealed.

The appellant also argues that in all previous cases the annexation proceedings were pending before the date of April 23, 1968 (adoption of new Constitution) and thus they were permitted to proceed and considered valid. This case according to the appellant was not

commenced until June 5, 1969 (after adoption of new Constitution) and therefore, is different. An identical situation was considered in *In Re Borough of Baldwin*, 217 Pa. Super. 346, 272 A. 2d 731 (1970). In that case the annexation proceeding was also commenced after April 23, 1968, and the court held that annexations under existing statutory enactments were valid *at least* until the date of April 23, 1970. April 23, 1970, is the two-year period which is referred to in the first paragraph of Section 8, of the New Local Government Article. That paragraph mandates the General Assembly to enact uniform legislation within two years. In the *Baldwin* case, it was held that annexation proceedings pending during the two-year period could be validly completed under existing legislation. We agree with what was stated in the *Baldwin* case and it controls the matter before us.

The view we have taken is in accord with the able opinion of Judge McCormick in the lower court and with previous decisions in the appellate courts of the Commonwealth.

The order of the court below is affirmed.