## Meadville *v.* West Mead Township.

Argued November 3, 1972, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Charles J. Swick,* City Solicitor, for appellant.

*Stuart A. Culbertson,* Township Solicitor, for appellee.

OPINION BY JUDGE KRAMER, December 11, 1972:

This is an appeal from an order of the Court of Common Pleas of Crawford County, sustaining the appeal of the Supervisors of West Mead Township (Township), and declaring "null and void" an Annexation Ordinance of the City of Meadville (City).

In November of 1967, an investment group (hereinafter referred to as Simonetta) of three men and their wives purchased approximately 169 acres of land situated in the Township, but adjacent to the City boundary lines. Simonetta intended to construct multifamily residential dwellings on about 50 acres of its property, with the remainder to be utilized for individual residential purposes. Simonetta made an informal inquiry with officials of the Township concerning the possibility of such a project including a general reference to the availability of water and sewage service. Simonetta, however, never made a specific proposal, and failed to respond to the request of Township officials for a more detailed statement of the Simonetta proposal. Having never commenced a formal proceeding before an official body of the Township, Si-

monetta obtained the signatures of seventeen property owners (out of a total of twenty-three) on a petition addressed to the City, requesting that an area totaling 180 acres, located in the Township, be annexed to the City.

Under the provisions of the Act of July 20, 1953, P. L. 550, 53 P.S. §67501 et seq., the City passed an Ordinance (on August 5, 1969), approving the annexation of the described realty, thereby declaring such realty to be a part of the City upon the approval of the Court of Common Pleas of Crawford County. On September 2, 1969, the Township filed a complaint and appeal from the annexation proceedings, which had been filed by the City with the court. The court, being satisfied with "the legality of the proceeding," (the Township having withdrawn its objection to the question of the legality) appointed a Board of three Commissioners (Board). The Board held hearings and filed a report containing its findings of fact for the use of the court. Thereafter the court below, having determined that it was in need of additional testimony and evidence, ordered an additional *hearing de novo*, excepting certain matters which had already been set forth in the Board's report. At the conclusion of the hearing before the court, at which all parties were encouraged to present their respective positions and supporting evidence, the court entered its final order and supporting opinion, sustaining the Township's appeal, from which order this appeal was lodged.

Our review of the record, made in this case, leads us to conclude that all of the procedural provisions of the 1953 Act, 53 P.S. §67501 et seq. were met. The sole issue presented to this Court by the City is whether the lower court abused its discretion in refusing to approve the annexation on the basis that it was not in "the public interest."

This case presents a typical bitterly contested annexation case between a rapidly growing and progressive city, seeking to increase its territorial limits, and a jealous township anxious to preserve unto itself its territory with all of its revenue producing benefits. The two municipalities involved in this case have been in court on several different annexation cases, perhaps more than any other two municipalities in the Commonwealth. As the court below pointed out in its opinion, in this case, and as we pointed out in the case of *West Mead Township v. Meadville,* 6 Pa. Commonwealth Ct. 265, 294 A. 2d 600 (1972), these two municipalities have battled constantly over questions of annexation for the past dozen years. Unfortunately the Legislature has not followed the mandate of the electorate as found in the constitutional amendments, effective April 23, 1968, Pennsylvania Constitution, Art. IX, §8, which states that the Legislature ". . . shall, within two years following the adoption of this article . . ." enact uniform legislation intended to cure the defects in the presently provided statutory procedure. In view of the fact that the Legislature has failed to act, the 1953 Act is still the controlling body of statutory law applicable to this case. *See Norwegian Township v. Minersville,* 5 Pa. Commonwealth Ct. 296, 290 A. 2d 273 (1972), and *Hempfield Township v. Greensburg,* 2 Pa. Commonwealth Ct. 619, 280 A. 2d 127 (1971). That Act provides that after having determined the legality of the proceedings, the court below, based upon the record made, must use its discretion to determine whether or not the annexation will serve the public interest.

Our scope of review is in the nature of broad certiorari (*Palmer Township Annexation Case,* 416 Pa. 163, 204 A. 2d 760 (1964)), wherein we look to the entire record to determine if the findings made by the court below are supported by competent evidence. We

are directed, also, to correct any conclusions of law which might have been erroneously made, and further we are directed not to substitute our discretion for that of the lower court. *See Lancaster Annexation Case,* 183 Pa. Superior Ct. 618, 132 A. 2d 743 (1957). As we noted in the case of *Upper Saucon Township v. Coopersburg,* 4 Pa. Commonwealth Ct. 214, 285 A. 2d 221 (1971), we are limited in our review to determining whether there is *"any"* evidence to support the lower court's findings, rather than the more stringent review of determining whether there is *sufficient* evidence to support the findings. *See also West Mead Township Annexation Case,* 206 Pa. Superior Ct. 166, 170, 213 A. 2d 124, 126 (1965); *West Mead Township Appeal,* 411 Pa. 94, 191 A. 2d 273 (1963).

The duty of the court below is to make its determination with a view to the overall propriety of the annexation in serving the public interest. *See West Mead Township Annexation Case, supra*; and *Palmer Township Annexation Case, supra.* It is interesting to note, our courts have held that the burden of either supporting or opposing an annexation petition is not placed upon any one party or municipality. *See Palmer Township Annexation Case, supra*; and *Hempfield Township Annexation Case,* 211 Pa. Superior Ct. 180, 237 A. 2d 244 (1967). The court below is directed to consider not only the municipalities involved, but also the interests of the owners of the property in the area proposed to be annexed. *Lancaster Annexation Case, supra.* This does not mean, however, that the desire of the feeholders should be the controlling fact; otherwise the mere filing of their petition would mandate approval. *See Chartiers Township Appeal,* 414 Pa. 176, 199 A. 2d 443 (1964). Loss or gain of tax revenues is also not a controlling factor. *Barry Township Annexation Case,* 398 Pa. 180, 157 A. 2d 410 (1960). It is clear from the Act, and the cases, that the Legislature never

intended municipal boundaries to remain stationary or inviolate. Rather, it was contemplated that social changes and governmental orderliness might necessitate municipal boundary changes. *See Lancaster City Annexation Case (No. 1)*, 374 Pa. 529, 98 A. 2d 25 (1953).

Taking all of these guidelines into account, we conclude that there is sufficient evidence to support the findings and conclusions of the court below to sustain the appeal of the Township and declare the Ordinance null and void.

There is merit to the thought that the local court of common pleas should be the repository of general supervisory, administrative, and discretionary power in annexation matters. The Legislature clearly directed that the determination of an annexation case be based upon ". . . the propriety of the annexation as serving public interest . . ." (53 P.S. §67502). The court below should be granted broad discretionary powers, for it, more than any appellate court, possesses the knowledge of local conditions necessary to determine whether the annexation is in the public interest. In the absence of a manifest abuse of discretion, the lower court should be affirmed. Our careful review of the record indicates to us that the moving parties, Simonetta, did not make any real effort to determine whether or not the construction project Simonetta had in mind could be accomplished in the Township without any need for an annexation of territory to the City. The lower court had a sufficient record before it to make a determination that approval of the annexation would not be in the public interest, taking into account the effect of an annexation and loss of territory upon the Township and its citizens remaining after the proposed annexation.

There is one matter in the opinion of the court below which we must mention in passing. In its opinion, although not a part of its order, the lower court de-

clared "a hiatus on annexation proceedings involving these two municipal governments," stating that it, the lower court, would ". . . not look favorably upon future annexation requests involving these two bodies until after at least January 1, 1974. . . ." This attempt at a judicial moratorium goes beyond the power of the lower court. Only the Legislature could declare such a moratorium. The lower court's concern over the piecemeal erosion of this Township's territory by way of annexation proceedings and the failure of the Legislature to follow the constitutional mandate is understandable. However, the lower court's cause for concern does not create any judicial-legislative power to create such a moratorium. Each case presented to the lower court must be determined upon the facts presented, and an application of the controlling statutory law. So that there will be no misunderstanding, it is the conclusion of this Court that the Common Pleas Court of Crawford County does not have the power, under the present law, to declare a moratorium on annexation cases between these two municipalities or any municipalities in Crawford County.

Based upon the foregoing, we affirm the court below.