# Richter v. Library Tax Elimination Referendum

*Murrell R. Walters III*, for petitioners. \
*Harold S. Irwin III*, for respondent.

HESS, *J.*, September 18, 1987— The factual posture of this case is not in dispute. A county library tax was voted into existence in the primary election of May 1986 and was first collected during the 1987 tax year. On September 3, 1987, a petition for referendum was filed with the office of the Cumberland County Commissioners. Filed by Mary K. Barrick, a resident of North Middleton Township, Cumberland County, Pa., and containing the signatures of numerous purported registered voters of the county, the petition requests a referendum on the question of eliminating the county library tax, asking that the question be submitted to the voters at the next general election, to be held on November 3, 1987.

This action has been brought by Patricia R. Richter, a resident of Mechanicsburg, Cumberland County, Pa., and the Mechanicsburg Area Public Library, seeking to have the referendum petition set aside. More specifically, the petition suggests that placing the proposed question on ballots in Cumberland County for the November 3, 1987, general election will violate principles of law which are both statutory and constitutional.

The request to set aside the referendum petition proposes to do so for two basic reasons. First, petitioners assert that the Library Code does not provide for discontinuance of the tax on a county wide basis. They allege that the exclusive method of discon-

tinuance is set forth in section 405 of the Library Code, 24 P.S. §4405, and is limited to a referendum for the withdrawal from the county library, and concomitant elimination of the tax, only by borough, town, township or school district. The second prong of attack assails the constitutionality of the Library Code and specifically that provision which permits withdrawal from a county library (albeit by municipality) upon petition of three percent of the previous gubernatorial electorate to place the matter on the ballot "at the next general or municipal election occurring at least 60 days after the filing of the petition." The assertion is that these provisions conflict with the definition of "initiative" in section 14 of Article IX of the Pennsylvania State Constitution. That definition provides that such election documents be filed with election officials at least 90 days prior to the next primary or general election and contain a proposal by five percent of the number of electors voting for the office of governor in the last gubernatorial election.

Mary Barrick, while not the named respondent, has filed preliminary objections to the petition to set aside the referendum petition. As we do not believe the preliminary objections have merit, we will not address the further question of whether the county election board, as opposed to Mrs. Barrick, is the proper respondent in this case.

## STANDING

In any event, the question has been raised as to whether Ms. Richter or the Mechanicsburg Area Public Library has standing to question the proposed referendum. At the outset, we are reminded that "the purpose of the requirement of standing is to protect against improper plaintiffs." *Application of Biester,* 487 Pa. 438, 442, 409 A.2d 848, 851

(1979). The leading case in Pennsylvania on the issue of standing is *William Penn Parking Garage Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). As gleaned from William Penn and as summarized in many Pennsylvania appellate decisions, the catch phrase with respect to standing is whether a party has a "substantial, direct and immediate" interest in the subject matter of the litigation. One requirement of consequences which are "immediate" is that they not be remote and that there be a direct causal connection between the action complained of and the injury to the person challenging.

Applying this principle to the instant case, a curious aspect of the factual circumstances becomes readily apparent. Ultimately, the petitioners seek to set aside the referendum petition so that it will not be on the election ballot in November of 1987. Therefore, the "asserted injury" to the petitioners is the presence of said referendum on the ballot. The underpinnings of the petitioners' argument, however, are that if the referendum petition appears on the ballot and the voters of Cumberland County decide to eliminate the special library tax, then petitioners will suffer damage due to the loss of tax revenues. Implicit in the ballot question itself, however, is the fact that the voters of Cumberland County could decide to continue the special library tax so that the petitioners would not suffer the damages claimed. It is arguable, also, that the County Commissioners could impose the tax in spite of the outcome of the referendum. See 24 P.S. §4401. Engrafting these facts over the standing requirements of *William Penn,* we observe that there is a question with respect to the "immediate" requirement.

In spite of this question, developments in the ap-

pellate courts since *William Penn* disclose a somewhat different approach to standing in certain "taxpayer" suits.[1] In *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania,* 510 Pa. 158, 507 A.2d 323 (1986), appellants were taxpayers who sought to challenge the constitutionality of a compensation law which increased legislators' salaries and expense allowances. Relying on *Application of Biester,* supra, the court, in *Consumer Party,* continued to carve out a narrow exception to the general rule of standing emphasizing that certain cases exist in which the facts warrant the grant of standing to taxpayers where their interest arguably is not substantial, direct and immediate.

"The relaxing of those interest requirements in certain cases where there is little causal connection between the action complained of and the injury alleged is best explained by the basic policy considerations underlying taxpayer standing. . . . Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirements. Such litigation allows the courts, within the framework of traditional notions of "standing," to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts. . . . The fundamental reason for granting taxpayer standing is simply that otherwise a large body of governmental activity would be unchallenged in the courts. . . .

"To summarize . . . we held that a taxpayer seeking standing to sue must allege a substantial, direct,

---

1. While the petition does not say so, Ms. Richter, in sworn testimony, indicated that she was a property owner and taxpayer in Cumberland County.

and immediate interest in the outcome of the suit unless the taxpayer can show:

"(1) the governmental action would otherwise go unchallenged;

"(2) those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action;

"(3) judicial relief is appropriate;

"(4) redress through other channels is unavailable; and

"(5) no other persons are better situated to assert the claim." Id., at 167-70, 507 A.2d at 328-29.

While the facts of the instant case are clearly distinguishable from those in *Consumer Party,* we believe that the above five factors may be applied in the instant case, by analogy, so as to confer standing.

This is a case where the county board of election has side-stepped the issue of whether the referendum question should appear on the ballot. It has indicated, for the record, that it takes no position in the instant litigation. While what is involved here is less "governmental action" than it is governmental inaction, it is clear that the questions herein will go unresolved without a grant of standing to the petitioner.

The second element enumerated above provides that the taxpayer must establish that "those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challege the action." Once again, an analogy is compelling as it is clear that persons not having to pay the library tax are, to that limited extent, financially benefitted and not inclined to challenge the action of placing the referendum petition on the ballot.

In examining the remaining elements necessary,

according to *Consumer Party,* we reiterate the professed neutrality of the board and note, therefore, that judicial relief is particularly appropriate and "redress through other channels is unavailable." The fifth element enumerated above provides that the taxpayer must establish that "no other persons are better situated to assert the claim." In the instant case, we are hard-pressed to name petitioners better situated than an active library user and one of the libraries of the county system. For all of the foregoing reasons, the petition filed on behalf of Mary Barrick, raising lack of capacity to sue, will be dismissed.

## ADOPTION AND DISCONTINUANCE OF THE TAX

Statutory provisions regarding the adoption of the library tax are set forth in the code in Article IV and specifically section 401 et seq., 24 P.S. §4401. The code provides that the municipal officers of any municipality may make appropriations "out of current revenue of the municipality or out of moneys raised by the levy of special taxes to establish and/or maintain a local library . . ." In the case of Cumberland County, however, the county commissioners did not choose to enact such a levy, but rather submitted the question to the voters pursuant to section 4402 of the code. This provides that:

"(a) The municipal officers of any municipality may submit to the qualified voters of such municipality at a special election to be held at the time of the next general, municipal, or primary election occurring not less than 60 days therefrom, the question of establishing, maintaining, and/or aiding in maintaining a local library and must submit such question if petitioned for by three percentum of the

number voting at the last preceding general or municipal election. At such election, the question of establishing an annual tax on all taxable property of the municipality, shall be submitted."

In the case at bar, such a question was presented to the electorate of the entire county in 1986. The question now arises whether that same electorate has the power to undo that which it has done.

Citing section 405 of the Library Code as authority, petitioners suggest that the exclusive method by which the tax is abolished is by vote of individual boroughs, townships, or school districts. We believe this reliance on section 405 is misplaced. In question is the following language:

"Wherever in a city, borough, town, township or school district, *there has been or may be established and maintained a separate local library* and there is at the time a county library in existence, three percentum of the number voting at the last preceding general or municipal election in said city, borough, town, township or school district, may petition the county commissioners to place on the ballot the question of whether or not such city, borough, town, township or school district, *shall be a part of the county library district* and be subject to levy and payment of any taxes levied for the purpose of maintaining or aiding in the maintenance of any county library. . . . If a majority of those voting on such questions vote in favor of the discontinuance of the county library and tax in said city, borough, town, township or school district, then such city, borough, town, township or school district, shall not thereafter be a part of the county library district and shall not be subject to the levy and payment of any taxes levied for the purpose of maintaining or aiding in the maintenance of any county library." (emphasis added)

This section presupposes that the municipality involved has a "separate local library." In other words, in order for the provisions of section 405 to become effective, the existence of a local library, not part of the county system, is an essential element. Following the petitioners' argument to its logical conclusion, once enacted, the people of any given municipality are powerless to void the library tax unless they have "established" and have chosen to maintain a separate library of their own. The factual record in this case does not reveal whether there are any municipal libraries which are not part of the county system. Conceivably, most, if not all, of the municipalities in Cubmerland County would be excluded from the section 405 method of discontinuance of the tax.

Clearly, section 405 is a way of protecting the integrity of the county library system, yet permitting an individual municipality to withdraw if the latter desires, instead, to maintain a library of its own. It is not the exclusive method of repealing the tax.

We are left, then, with only two possible conclusions. Either the library tax, once enacted, is not susceptible to repeal or the tax may be repealed in the same fashion in which it was enacted. Satisfied that the first proposition is incorrect, we are led to a determination that it is the second which is the law.[2] This conclusion gains support from the wording of the statute itself. In section 404, for example, we read that the "rate of tax so voted shall be an an-

---

2. In construing a staute which is not explicit, the courts are required to presume that the legislature did not intend a result which is absurd or unreasonable. *Pennsylvania Public Utility Commission v. Commonwealth*, 23 Pa. Commw. 566, 353 A.2d 887 (1976).

nual tax rate until another vote is taken changing the same . . ." It would, we believe, be unreasonable to assume that the electorate could vote the rate of tax into virtual oblivion but be incapable of nullifying it altogether.

Moreover, in section 402 the question of establishing, maintaining or aiding libraries must be submitted if petitioned for by three percent of the number of persons voting at the last preceding general or municipal election. The "question of establishing, maintaining and/or aiding in maintaining" libraries is not a question unless it can be answered in the negative as well as the affirmative. For some reason, the legislature chose not to limit the frequency with which this question could be posed to the voters. In other words, it is conceivable that this question could be posed at least annually. If this be seen as a shortcoming, however, it is one which may be easily remedied by the legislature (though not by the court).

The taxation provisions of the Library Code are unique. Many statutes, of course, permit the levy of taxes for the purpose of local revenue and include funds for institution district, 16 P.S. §4970.2; parks and playgrounds, 16 P.S. §2507; roads and bridges, 16 P.S. §2707; a memorial hall, 16 P.S. §2366; a county tuberculosis hospital, 16 P.S. §2118; building or repairing bridges, 16 P.S. §2675, etc. While many of these taxing provisions have limitations with respect to the mill rate, without exception they are levied by vote of the county commissioners and not the electorate. The library tax, however, may be imposed upon the people by their exercise of franchise. Implicit, we believe, in the ability of the people to impose a tax, is the right of the same people to abolish it.

## CONSTITUTIONALITY

For the purpose of the petitioners' challenge on constitutional grounds, we will assume, arguendo, that the questioned portions of the Library Code make it possible to place a tax referendum on the ballot within 60 days of the next election by petition signed by only three percent of the previous gubernatorial electorate. We note, further, that the definition of "initiative" in section 14 of Article IX of the constitution requires a filing 90 days prior to the next election and that it contain the signatures of five percent of the number of electors voting for governor in the most recent such election. The definition, in the constitution, however, is preceded with the following phrase: "As used in this article" [namely Article IX of the constitution] "the following words shall have the following meanings:" We have searched through Article IX from one end to the other and find no mention, whatsoever, of tax initiatives, libraries, or anything else related to referendum sub judice. In fact, Article IX, dealing with local government, mentions initative and referendum only in the context of the adoption of home rule charters (section 2), optional forms of government (section 3), intergovernmental cooperation (section 5), and a change of municipal boundaries (section 6).

Our appellate courts have specifically held that word relating to portions of the constitution do not apply to legislation outside a particular constitutional context. In *Township of Hempfield v. City of Greensburg*, 2 Pa. Commw. 619, 280 A.2d 127 (1971) the Commonwealth Court, alse dealing with Article IX of the constitution, examined the meaning of the following language:

"This new article and the repeal of existing sections shall take effect on the date of approval by the

electorate. . ."

Therein the court held specifically that the word "sections" within the 1968 local government article meant sections of the constitution and did not apply to legislation.

The definition of "initiative" in Article IX of the constitution is, by the terms of section 14, limited to its use in that article. Accordingly, it is of no utility in any other context. Thus, we find no conflict between the local government provisions of the constitution and the referendum requirements of the Library Code.

In accordance with the foregoing, we enter the following

## ORDER

And now, this September 18, 1987, the petition of Mary Barrick, raising lack of capacity to sue is dismissed.

The petition of Patricia R. Richter and the Mechanicsburg Area Public Library to set aside referendum petition is dismissed.